MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

BRIGID S. MARTIN (CABN 231705)
Assistant United States Attorney
    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Brigid.Martin@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CLARENCE ANDREWS, <br><br> Defendant. | NO. CR-14-00094 YGR <br><br> UNITED STATES' SENTENCING MEMORANDUM |

The United States files this Sentencing Memorandum in support of its recommendation that this Court sentence defendant Clarence Andrews to a term of imprisonment of 210 months, a three-year term of supervised release, a $100 special assessment, and restitution in the amount of $X.

### I. FACTUAL BACKGROUND

Between in or about the Fall of 2012 and January 2014, a number of individuals participated in a conspiracy to rob jewelry from victims who advertised items for sale on Craigslist, and from jewelry stores. The robbery crew was responsible for a total of approximately thirty (30) robberies, during many of which expensive jewelry items such as diamond rings and Rolex watches were successfully stolen.

Clarence Andrews confessed to being a member of the conspiracy, confessed to agents when he was arrested that he possessed a firearm, admitted that firearms were used in the commission of some of the robberies, and confessed his detailed role in five (5) separate robberies between February 2013 and January 2014.  Part of the reason the government required the defendant to specifically admit to his role in at least five (5) robberies was to make sure that if he was not a career offender, that his guidelines range included the maximum combined offense level adjustment.  Once the combined offense level reaches +5, it does not matter if the defendant has committed five robberies, or twenty-five robberies, his offense level will not increase above +5.  In this case, it turned out that it only added up to a +4, but the government's intent was to make sure that the guidelines reflected the breadth of the conspiracy.

According to two cooperating co-conspirators, both who have pleaded guilty to their role in the conspiracy, Andrews participated in the majority, if not all but one, of the robberies.

Along with a coconspirator who organized the conspiracy from within his state prison cell, Andrews and coconspirator Michael Martin were the three oldest and most culpable members of the conspiracy.  These three had been arrested together in the past and have known each other a long time.  Andrews was the leader of the robberies on the outside, and sometimes also communicated with the targeted victims.

Andrews admitted at his change of plea that he participated in the conspiracy from  on or about February 18, 2013, through in or about January 29, 2014.  He admitted that he conspired with Jermaine Nelson, Michael Martin, Kane Brazeal, and others to obtain property he knew he was not entitled to receive by inducing victims to part with the property by the threat of force or fear.

Among other robberies, the defendant helped to plan with coconspirators and specifically admitted details of his participation in five robberies.

February 18, 2013 Robbery (Manteca)

Andrews agreed with others, planned, and participated in the robbery of the New York Diamonds jewelry store in Manteca, California on February 18, 2013.  Andrews stated he was at the

Walmart nearby and then took the stolen items to sell to a third party.  The government has video footage from the Walmart next to the diamond store confirming Andrews's presence.

<u>June 10, 2013 Robbery (Oakland)</u>

Andrews agreed with others, planned, and participated in the robbery of an individual victim from out of state who advertised a Rolex watch for sale on Craigslist.  Andrews participated in the scheme in which the conspiracy induced the victim to fly into Oakland to sell the watch.  Coconspirators met the victim at a Wells Fargo Bank in Oakland, the victim handed the watch to the purported buyer, and he ran out of the bank with the watch.  When witnesses tackled the thief, other coconspirators used their fists to attack the witness and allow the coconspirator with the watch to get away.  Andrews specifically admitted that he helped attack the witness to help the coconspirator thief get away.

<u>July 3, 2013 Robbery (El Cerrito)</u>

Andrews agreed with others, planned, and participated in the robbery of an individual victim from Southern California who advertised diamonds for sale on Craigslist.  On July 3, 2013, Andrews participated in the scheme in which the conspiracy induced the victim to fly to Oakland to sell the diamonds.  Andrews drove the vehicle in which the picked up the victim from the Oakland Airport and drove him to El Cerrito, California, for the purpose of robbing the victim.  During this robbery, the conspirators used a firearm and hit the victim on the head with the firearm, and stole two diamonds from the victim.

<u>July 11, 2013 Robbery (El Cerrito)</u>

Andrews agreed with others, planned, and participated in the robbery of an individual victim from out of state (Oregon) who advertised a diamond for sale on Craigslist.  On July 11, 2013, Andrews participated in the scheme in which the conspiracy induced the victim to fly to Oakland to sell the diamond.  Andrews again drove the purported airport limousine to pick up the victim and then drove her from the airport to a predetermined robbery location in El Cerrito, where conspirators pulled the victim

CR 14-0094 YGR
U.S. SENT'G MEM.                                         3

out of the limo and used a silver handgun to rob the victim of the diamond she had posted for sale on Craigslist.

December 16, 2013 Conspiracy (Oakland)

On or before Dec 16, 2013, Andrews planned and agreed with others to participate in the robbery of an individual from out of state selling watch on Craigslist.  Coconspirators rented a vehicle from Avis rental and had an individual pose as an airport limo driver.  The driver went to the airport and attempted to pick up the person they thought had the item listed for sale on Craigslist.  The person was a law enforcement officer and thus the robbery never ran to completion.  Andrews was on the phone instructing the limo driver about who to pick up and where to go at the time the driver picked up the agent.

II.     PROECEDURAL BACKGROUND

On January 30, 2014, the government filed a Complaint against Andrews.  On February 20, 2014, Andrews was indicted on conspiracy robbery charges.  On the same date, February 20, 2014, coconspirators were also indicted on robbery charges in a separate case CR 14-00093 JSW, *United States v. Rafael Davis, Jaedon Evans, Keegan Cotton, and Kane Brazeal*.  Defendant Michael Martin was later added as a codefendant in case CR 14-00093.  At that time, Andrews's case was under seal. On March 10, 2014, the government filed a notice of related case, making the District Judge with the lower numbered case, the Honorable Jeffrey S. White, aware of the related cases in the event that he would order them related and reassigning Andrews's case to His Honor's docket for judicial economy because these cases stem from the same robbery conspiracy.

Andrews had his first appearance before this Court a few days later, on March 13, 2014, before the Honorable Jeffrey S. White had ruled on the related case notice and motion.  At that time, Andrews expressed his desire to plead guilty right away, and the Court specially set his case for change of plea the following day.  At that hearing, the Court surmised that Andrews might be making that choice in order

CR 14-0094 YGR
U.S. SENT'G MEM.                                4

to avoid having the cases related and reassigned. The government, surprised by this sudden change, immediately moved for the plea to be unsealed and made in open court, and moved for the complaint, indictment and all future proceedings to be unsealed. Given Andrews's sudden plea, the cases were related though Andrews's case was not reassigned because he must be sentenced by the Court that took his plea.

At this point, in the related case, CR 14-00093 JSW, two defendants have pleaded guilty in open court: Rafael Davis and Jaedon Evans. These two defendants were the lowest level participants charged to date. They were both 19 years old at the time of the robbery attempt. The government is only aware of their participation in the one attempted robbery on June 20, 2013, and is unaware of their participation or knowledge in the larger Craigslist robbery conspiracy. The government understands that they were recruited by lower level conspiracy members for the June 20 robbery. Davis drove the getaway car, and Evans helped commit the attempted robbery with a pellet gun. Davis and Evans pleaded not to conspiracy, but merely to the single robbery attempt. Davis received a sentence of 41 months, and Evans received a sentence of 46 months. This was the first adult conviction for both of these defendants.

III.    UNITED STATES SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the accuracy of U.S. Probation's Sentencing Guidelines calculations. While the defendant is a Career Offender and usually the career offender guidelines would apply, because of all the upward adjustments due to the number of robberies committed, and the use of a firearm within those robberies, and the value of the items stolen, his offense level is higher without application of the Career Offender guidelines. The government agrees with Probation that the defendant's total offense level is 32.

The government further agrees that because the defendant is a Career Offender, that his Criminal History Category is VI. This is absolutely appropriate and accurately reflects the defendant's dangerousness and significant history of violent crime. Andrews five criminal convictions for felony

CR 14-0094 YGR
U.S. SENT'G MEM.                5

crimes of violence: theft from the person of another in 2009, robbery in 2007 and 1997, evading a police offer in 2004, and battery in 1996. The battery is too old to count in this case. He also has a burglary conviction in 1997, felony vehicle theft in 1994, and disturbing the peace in 1993. This defendant's criminal history has continued unabated for years, escalating from disturbing the peace to robbery, with the robberies getting more intricate, involving more expensive items, and increasing in violence. The defendant is 39 years old and is still fully engaged in a life of crime. He is the very definition of a Career Offender.

Offense level 32 and Criminal History Category VI result in a guidelines range of 210 to 262 months imprisonment.

IV.     RESTITUTION

The government has complied with its notice requirements to victims of the conspiracy. To date, the government is surprised that it has received a response and claim from only one victim. We know that this victim was a victim of the conspiracy because the police report shows that the robbery was committed by a crew with the same modus operandi. The purported buyer used the false name "Marcus Gate" when contacting the victim -- a name used by the conspiracy in other robberies. And finally, the government has records that coconspirator Michael Martin rented an Escalade the day of the robbery and returned it the next day. The victim reported he was picked up in an Escalade. Thus even though the defendant did not allocate to participation in this specific robbery, the government can prove beyond a reasonable doubt that this robbery was a robbery committed within the conspiracy of which the defendant was a member. This the defendant should be required to pay restitution, along with any other coconspirators who are convicted. The robbery victim had two watches -- a Rolex and Tag Heuer – stolen, in addition to all of his personal items he was traveling with. The victim had flown from Seattle to Oakland to sell his watches, only to be robbed by the Craigslist crew. The robbers trapped him in the Escalade by sitting on either side of him, and punched him in the head and face numerous times. The police report is filed as an under seal exhibit attached to this memorandum. The government will provide a copy of the police report to the defense.

The Mandatory Victim's Restitution Act (MVRA) defines the word 'victim' as 'a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. *United States v. Yeung,* 672 F.3d 594, 600 (9th Cir. 2012) (quoting § 3663A(a)(2)).  The goal of restitution under the MVRA is to make the victim whole. *Id.* at 600–01.  Therefore, restitution is limited to the victim's actual losses. *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 1562 (2014).

The MVRA limits restitution for an offense resulting in loss of property to either the return of the property or, if that is "impossible, impracticable, or inadequate," to payment of "the greater of ... the value of the property on the date of the damage, loss, or destruction; or ... the value of the property on the date of sentencing, less ... the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1).  Recently the Supreme Court provided an example of this calculation: "say, a swindler who obtains jewelry is unable to return all of the jewelry, and must then instead pay an amount equal to the value of the jewelry obtained less the value (as of the date of return) of any jewelry that he did return.  [The MVRA] directs the court to value the returned jewelry as of the date it was returned and subtract that amount from the value of all of the jewelry the swindler obtained." *Robers v. United States*, 134 S. Ct. 1854, 1858 (2014).

The MVRA requires defendants to make restitution to each victim in the full amount of the victim's losses, *without* consideration of the defendants' financial condition. 18 U.S.C. §§ 3663A(a)(1) and 3664(f)(1)(A).  Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence, with the burden of proof resting on the government. 18 U.S.C. § 3664(e).

Here, the loss amount requested by the victim from the August 6, 2013 robbery is $51,319.81 payable to the victim's insurance company, $512.47 payable to the victim to compensate him for the insurance deductible he had to pay, and $406.08 for investigative hours spent by the insurance company in investigating this claim, for a total of **$52,238.26.**  The government has provided documentation in an under seal filing.  The government has also previously provided these items to the defense.  The

government requests that the final presentence report be amended to include the restitution amount and the government will work with the Probation Office to also include the contact addresses for restitution payments to the victim and the victim's insurance company.

V.   SENTENCING RECOMMENDATION

After *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory, but only advisory. *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008). Sentencing proceedings begin by correctly calculating the applicable Guidelines range. *Id.* at 991. In this sense, the Guidelines are "the starting point and the initial benchmark." *Id.* The sentencing court should then consider the 18 U.S.C. § 3553(a) factors to further determine what sentence would be reasonable and appropriate. *Id.* at 991-92. If the sentencing court decides that a sentence outside the Guidelines is warranted, the court must consider the extent of the deviation and ensure that the justification is significantly compelling to support the degree of the variance. *Id.* at 991.

While the government understands that the Court does not merely blindly follow the guidelines recommendation when imposing sentence, the government urges the Court to apply a guideline sentence in this case. The defendant here has guidelines that result from his allocation of five specific robberies. Yet the number of robberies committed by this conspiracy is about six times more than those specifically admitted by this defendant. And the government believes based on the statements of coconspirators and corroborating evidence that this defendant participated in the vast majority, if not nearly all, of the robberies. The defendant is 39 years old. He has a significant criminal history. And he is a Career Offender not because of technical violations or because he just meets the threshold, but with *four felony convictions for crimes of violence*. He is not a first time robber. The defendant's robberies have grown more complex, with larger targets and more dangerous weapons. He has recruited young people to help with the robberies.

For this sentence to be sufficient, but not greater than necessary, to meet the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2), it must be significant. The sentence must punish the defendant for the violence he has committed against so many individuals, it must keep the community safe, and it

must reflect the complexity and the breadth of the conspiracy, affecting everyone who seeks to do business using Craigslist, and specific targeted victims across the country.  No sentence less than the low end here, 210 months, would be appropriate.  This would be a sentence of about 17 years, which is less than one year for each of the violent robberies or attempted robberies committed by the conspiracy.

Finally, due to the violent nature of the crimes committed, and his possession and use of firearms, the government also requests the special search condition, without reasonable suspicion, be imposed while the defendant is on supervised release.

VI.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence defendant 210 months in custody, three years of supervised release, order restitution to the victim and insurance company, impose a special search condition, and apply a $100 special assessment.

Dated: <u>December 5, 2014</u>                              Respectfully Submitted,

                                                                            MELINDA HAAG
                                                                            United States Attorney

                                                                            /s/ Brigid Martin_____
                                                                            BRIGID S. MARTIN
                                                                            Assistant United States Attorney

U.S. SENT'G MEM.                              9