```
                UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

    BEFORE THE HONORABLE KANDIS A. WESTMORE, MAGISTRATE JUDGE

    THE UNITED STATES OF AMERICA,


                        PLAINTIFF,

      VS.                           NO. CR-14-94 YGR
                                    PAGES 1 - 15
    CLARENCE LEE ANDREWS,


                        DEFENDANT.
    _____

                    OAKLAND, CALIFORNIA
              FEBRUARY 7, 2014
                    TRANSCRIPT OF PROCEEDINGS

    APPEARANCES:

    FOR PLAINTIFF:
    UNITED STATES ATTORNEY'S OFFICE
    1301 CLAY STREET
    OAKLAND, CALIFORNIA 94612

    BY:  BRIGID MARTIN, ASSISTANT UNITED STATES ATTORNEY


    FOR DEFENDANT:
    FEDERAL PUBLIC DEFENDER'S OFFICE
    555 12TH STREET, SUITE 650
    OAKLAND, CALIFORNIA 94607-3627



    BY:  ELLEN LEONIDA, ASSISTANT PUBLIC DEFENDER


    REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR
```

```
 1        FEBRUARY 7, 2014                        10:44 O'CLOCK A.M.
 2
 3                           P R O C E E D I N G S
 4            THE CLERK:  THE NEXT CASE IS AN UNDER SEAL CASE, SO
 5   EVERYONE WHO IS NOT INVOLVED, PLEASE LEAVE THE COURTROOM.
 6            MS. LEONIDA:  EVERYONE HERE IS ON THIS CASE.
 7            THE CLERK:  OH, FOR THIS CASE?
 8            MS. LEONIDA:  YES.
 9            THE CLERK:  CALLING 14-70109, USA VERSUS CLARENCE
10   ANDREWS.
11            **MS. MARTIN:**  GOOD MORNING, YOUR HONOR.  BRIGID MARTIN
12   FOR THE UNITED STATES.
13            THE COURT:  GOOD MORNING, MS. MARTIN.
14            MS. LEONIDA:  GOOD MORNING, YOUR HONOR.  ELLEN LEONIDA
15   WITH MR. ANDREWS.  HE'S PRESENT AND IN CUSTODY.
16            THE COURT:  GOOD MORNING, MS. LEONIDA AND MR. ANDREWS.
17     COUNSEL, THIS MATTER IS ON FOR DETENTION HEARING. PRETRIAL
18   SERVICES PREPARED A DETAILED REPORT.  AND THE RECOMMENDATION
19   FROM PRETRIAL SERVICES IS THAT THE DEFENDANT BE DETAINED.  AND
20   IT LOOKS LIKE IT'S PRIMARILY ON HIS BEING A DANGER TO THE
21   COMMUNITY.
22         SO I'LL HEAR FROM MS. LEONIDA.
23            MS. LEONIDA:  THANK YOU.  ACTUALLY, I'LL START BY
24   ADDRESSING THE FLIGHT RISK FACTORS, ONLY BECAUSE THE COURT DID
25   REFERENCE LAST TIME WE WERE HERE A NUMBER OF FAILURES TO APPEAR.
```

1  I'VE LOOKED AT THE PRETRIAL SERVICES REPORT AND I THINK IT IS
2  NOTABLE THAT THE LAST ONE OCCURRED THAT IS NOTED ON THE REPORT
3  WAS IN 1996, WHICH IS OVER 15 YEARS AGO.
4       IN ADDITION, MR. ANDREWS HAS --
5       THE COURT:  HOLD ON.  MS. MARTIN, IS IT BY THE
6  MICROPHONE OR SOMETHING?
7       MS. LEONIDA:  OH, I'M SORRY.  I DIDN'T REALIZE.  I
8  THOUGHT MY VIBRATE WAS OFF, AS WELL.
9       THE COURT:  ALL RIGHT.  SO YOU WERE SAYING?
10      MS. LEONIDA:  I WAS SAYING MR. ANDREWS HAS SIGNIFICANT
11 TIES TO THE COMMUNITY.  ALL OF THE PEOPLE IN THE COURTROOM ARE
12 HERE TO SUPPORT HIM.  HE HAS FAMILY TIES.  HIS MOTHER IS HERE, A
13 NEIGHBOR, HIS SIGNIFICANT OTHER, DANIELLE WILLIAMS, WHO IS THE
14 MOTHER OF HIS TWO-YEAR-OLD SON, A NEIGHBOR AND MULTIPLE FRIENDS.
15      HE HAS A STABLE RESIDENCE.  HIS MOTHER OWNS HER HOME AND
16 HE HAS LIVED THERE SINCE 1989.  HE HAS NO HISTORY OF DRUG OR
17 ALCOHOL ABUSE.  AND HE DOES HAVE A HISTORY OF STABLE EMPLOYMENT
18 AS WELL A PROSPECT OF FUTURE EMPLOYMENT.  HE SPENT
19 TWO-AND-A-HALF YEARS WORKING IN LEAD ABATEMENT IN WEST OAKLAND,
20 AND THERE IS ANOTHER PROJECT IN THE FIELD STARTING IN ALAMEDA
21 WHERE HE IS CONFIDENT THAT HE WOULD BE TAKEN ON IF HE WERE
22 RELEASED.
23      AND I THINK PRETRIAL ALSO AGREES THAT CONDITIONS COULD BE
24 CRAFTED TO ENSURE THAT HE WAS NOT A FLIGHT RISK.  THE MORE
25 CONTENTIOUS ISSUE, AS I UNDERSTAND IT HERE IS WHETHER MR.

1   ANDREWS PRESENTS A DANGER TO THE COMMUNITY, IF RELEASED.  AND I
2   THINK CONDITIONS COULD BE CRAFTED TO MITIGATE ANY POTENTIAL
3   DANGER THAT HE POSES.
4        I THINK MR. ANDREWS' CRIMINAL HISTORY -- AND THE COURT IS
5   AWARE OF IT, AND IT DOES CONTAIN SOME TROUBLING CONVICTIONS.
6   BUT THAT CAN'T BE THE BEGINNING AND THE END OF THE INQUIRY INTO
7   WHETHER HE POSES A DANGER AND WHETHER THAT DANGER CAN BE
8   MITIGATED BY CONDITIONS.
9        THE COURT SHOULD ALSO LOOK AT HIS CONDUCT WHEN HE WAS
10  ARRESTED.  HE COOPERATED WITH LAW ENFORCEMENT.  HE FULLY
11  ADMITTED HIS INVOLVEMENT.  HE EVEN MADE A CALL TO ANOTHER -- TO
12  A TARGET INVOLVED IN ORDER TO ASSIST THEM IN THEIR
13  INVESTIGATION.  HE WAS FULLY COOPERATIVE WITH THEM.
14       THE COURT SHOULD ALSO LOOK AT HIS MOTIVATION TO COMPLY, TO
15  NOT BE A DANGER.  AND HIS MOTIVATION IS HERE IN COURT TODAY.  HE
16  HAS A TWO-YEAR-OLD SON.  HE HAS A SIGNIFICANT OTHER.  HE HAS A
17  FAMILY AND FRIENDS.  AND I THINK IT IS VERY TELLING THAT ALL OF
18  THESE PEOPLE ARE HERE AND THEY ARE WILLING TO RISK THEIR OWN
19  FINANCIAL STABILITY.
20       HIS MOTHER IS HERE, DEBRA WELLS.  SHE OWNS PROPERTY THAT
21  SHE IS WILLING TO POST AS A PROPERTY BOND.  HIS SIGNIFICANT
22  OTHER, DANIELLE WILLIAMS, IS HERE.  SHE IS ALSO WILLING TO SIGN
23  ON AS A SURETY.  IN ADDITION, HIS COUSIN, ANTHONY PATRICK, IS
24  WILLING TO CO-SIGN A BOND.  AND SEVERAL FRIENDS:  SHALLA HUDSON
25  (PHONETIC) FATIMA PAULINA (PHONETIC), NIEMA ASHBURG (PHONETIC)

```
 1   AND AKINA GOUDE (PHONETIC) ARE ALL HERE.  THERE ARE SEVEN
 2   PEOPLE.  THEY ARE WORKING PEOPLE.  THEY ARE STUDENTS.  THEY HAVE
 3   A LOT TO LOSE.  AND THEY ARE ALL WILLING TO RISK THAT, TO PUT IT
 4   ON THE LINE BECAUSE THEY HAVE THAT KIND OF FAITH IN MR. ANDREWS.
 5   AND I THINK --
 6           THE COURT:  AND THEY KNOW WHAT IT IS?
 7           MS. LEONIDA:  THEY DO.  I TOLD THEM THE CHARGES.
 8           THE COURT:  DO YOU KNOW IF ALL OF THEM SPOKE TO
 9   PRETRIAL SERVICES?
10           MS. LEONIDA:  THEY DIDN'T, BUT THEY ALL SPOKE TO ME.
11           THE COURT:  OKAY.
12           MS. LEONIDA:  AND I TOLD THEM ALL THAT HE WAS CHARGED
13   WITH ROBBERY.  AND THEY KNOW THAT IT'S A FEDERAL COURT AND THEY
14   KNOW THAT IT IS SERIOUS.
15           THE COURT:  THEY KNOW ABOUT, I MEAN, WHAT THIS CASE IS
16   ABOUT?  OR DID YOU JUST TELL THEM IT'S JUST ROBBERY?
17           MS. LEONIDA:  I ONLY TOLD THEM THE CHARGES.
18           MS. MARTIN:  YOUR HONOR, MAY I HAVE A MOMENT JUST TO
19   CONFER WITH DEFENSE COUNSEL JUST FOR A SECOND?
20           THE COURT:  YES.
21        (COUNSEL CONFER.)
22           MS. MARTIN:  OKAY.  SORRY ABOUT THAT, YOUR HONOR.  I
23   JUST -- BECAUSE THE ACTUAL COMPLAINT IS UNDER SEAL I DON'T KNOW
24   HOW MUCH THEY CAN ACTUALLY KNOW ABOUT WHAT GOES ON.  BUT
25   HOPEFULLY AS WE TALK TODAY ABOUT WHAT HAPPENED AND THE VIOLENT
```

1  NATURE OF THINGS THEY WILL GET A BETTER PICTURE OF WHAT HE'S
2  BEING ACCUSED OF DOING AS FAR AS THE ROBBERY GOES.
3          THE COURT:  ALL RIGHT.
4          MS. LEONIDA:  SO I DO THINK THAT FACT THAT THESE SEVEN
5  PEOPLE ARE HERE WHO ARE UPSTANDING MEMBERS OF THE COMMUNITY,
6  AGAIN, WORKERS AND STUDENTS WITH SIGNIFICANT RISK ARE WILLING TO
7  TAKE THAT RISK TO SUPPORT MR. ANDREWS.  AND I THINK THAT HE ALSO
8  WILL THEN BE ADDITIONALLY MOTIVATED TO COMPLY WITH ANY
9  DIRECTIVES OF THE COURT.
10         AND, FINALLY, I THINK THAT IF THE COURT LOOKS AT THE FULL
11 RANGE OF OPTIONS THE QUESTION IS NOT JUST TO RELEASE HIM OR KEEP
12 HIM IN CUSTODY.  THERE ARE PEOPLE HERE WHO ARE WILLING TO ACT AS
13 A CUSTODIAN.  HE COULD BE PLACED ON LOCATION MONITORING.  HE
14 COULD BE SENT TO A HALFWAY HOUSE.
15         I THINK AN EVALUATION OF THIS CASE THAT EXTENDS BEYOND
16 JUST LOOKING AT HIS RAP SHEET AND LOOKING AT WHO HE IS AND HIS
17 PLACE IN THE COMMUNITY AND HIS SUPPORT IN THE COMMUNITY ALL
18 MITIGATES ANY POTENTIAL DANGER THAT HE COULD POSE AND THAT
19 CONDITIONS COULD BE CRAFTED TO ENSURE THAT HE COMES TO COURT AND
20 COMPLIES WITH THE COURT'S ORDERS.
21         THE COURT:  ALL RIGHT.  I AGREE WITH YOU AS WELL AS
22 WITH PRETRIAL SERVICES THAT THERE PROBABLY ARE CONDITIONS THAT
23 COULD BE IMPOSED TO ADDRESS THE RISK OF FLIGHT, HOWEVER I'M NOT
24 NECESSARILY CONVINCED ABOUT THE DANGER PART OF IT.  SO I'LL HEAR
25 FROM THE GOVERNMENT.

1                MS. MARTIN:  OKAY.  AND, YOUR HONOR, JUST TO TOUCH ON
2    RISK OF FLIGHT I DO THINK THAT EVEN THOUGH DEFENSE HAS POINTED
3    OUT THAT HIS LAST FAILURE TO APPEAR WAS IN 1996, HE'S GOT
4    MULTIPLE PROBATION AND PAROLE VIOLATIONS EXTENDING IT TO 2006.
5          SO HE HAS --
6                THE COURT:  OH, IS THAT RIGHT?
7                MS. MARTIN:  YES.  HE HAS, WHICH IN MY ESTIMATION, ARE
8    ACTUALLY MORE OF A REASON --
9                THE COURT:  LET ME JUST FIND THOSE REAL QUICK.  SO WE
10   HAVE --
11               MS. MARTIN:  THERE'S TWO IN 2001 AND TWO IN 2006.
12               THE COURT:  AND THESE ARE PROBATION VIOLATIONS?
13               MS. MARTIN:  THE FIRST ONE IN 2001 IS A PROBATION
14   REVOCATION WHEN HE WAS ARRESTED FOR FORGERY.  AND THEN, THERE
15   WAS ALSO A PAROLE VIOLATION NOTED BELOW THAT.  I AM NOT SURE IF
16   THAT STEMMED FROM THE SAME CONDUCT.
17               THE COURT:  OKAY.
18               MS. MARTIN:  AND THEN HE HAS GOT IN 2006 TWO ADDITIONAL
19   PAROLE VIOLATIONS.
20      AND THAT GOES TO BOTH POTENTIALLY FLIGHT RISK BECAUSE IT'S
21   WHETHER OR NOT HE'S AMENABLE TO SUPERVISION AND REMAINING ON
22   SUPERVISION, BUT ALSO TO DANGER BECAUSE IF HE'S ON SUPERVISION,
23   AS HE HAS BEEN IN THE PAST, HE CONTINUES TO COMMIT VIOLENT
24   FELONIES.  AND THE CRIMINAL HISTORY IS PRETTY OFFENSIVE, AND
25   ALMOST ALL -- ACTUALLY, SO HE'S GOT THREE -- AT LEAST THREE

1    VIOLENT FELONIES SINCE 1997.  A ROBBERY FELONY CONVICTION IN
2    1997.  IN 2004 AN EVADING FELONY, WHICH IS CONSIDERED A CRIME OF
3    VIOLENCE FOR THE FEDERAL COURTS, 2800.2.  AND THEN, IN 2007
4    ANOTHER ROBBERY FELONY CONVICTION.  AND THEN, IN 2009 A GRAND
5    THEFT FELONY CONVICTION, WHICH DEPENDING ON WHAT STATUTE THAT'S
6    UNDER COULD ALSO BE CONSIDERED A VIOLENT CRIME.
7         SO WE'VE GOT ALL THESE VIOLENT CRIMES, YOU KNOW, EVERY FEW
8    YEARS UP UNTIL 2009.  WE KNOW FROM THE INFORMATION WE'VE
9    RECEIVED FROM THE DEFENDANT HIMSELF THAT HE'S BEEN ENGAGED IN A
10   CONSPIRACY AND DIRECTLY IN ROBBERIES AND ATTEMPTED ROBBERIES --
11            THE COURT:  ARMED ROBBERIES.
12            MS. MARTIN:  -- ARMED ROBBERIES FOR THE LAST COUPLE OF
13   YEARS, AT LEAST.  SO THERE HAS BEEN NO STOPPING IN-BETWEEN 1997
14   AND NOW, REALLY, FROM THIS VIOLENT BEHAVIOR.
15        AND HE -- NOT ONLY DO WE KNOW THAT HE DID IT, AND I KNOW
16   THAT THE WEIGHT OF THE EVIDENCE AGAINST SOMEONE IS THE LEAST
17   CONSIDERED FACTOR, BUT HE HAS CONFESSED THAT HE'S BEEN A PART OF
18   THIS.  AND HE'S CONFESSED TO BEING INVOLVED IN SOME OF THE
19   ROBBERIES WHERE VIOLENCE WAS USED.
20        HE TOLD US THAT HE WAS PART OF A ROBBERY.  AND, YOU KNOW,
21   THIS IS AGAIN HIS WORD ABOUT HIS INVOLVEMENT.  BUT HE AT LEAST
22   ADMITTED THAT HE WAS THERE WHEN SOMEONE HIT SOMEONE ELSE ON THE
23   HEAD WITH A FIREARM AND MADE THEM BLEED.
24        WE ADDITIONALLY HAVE PHONE CALLS THAT HE MADE WHERE HE
25   TALKS ABOUT BEING INVOLVED IN ROBBERIES AND TRYING TO SET UP

| | |
|---|---|
| 1 | ADDITIONAL ROBBERIES, LURING PEOPLE IN FROM CRAIGSLIST AND THEN |
| 2 | ROBBING THEM AT GUNPOINT.  HE ALSO MADE A COMMENT AT ONE POINT |
| 3 | TO AGENTS THAT HE DIDN'T WANT ANYONE ELSE TO DIE, AND I DON'T |
| 4 | KNOW WHAT THAT MEANS.  I DON'T KNOW IF THERE WAS SOME POINT IN |
| 5 | TIME THAT SOMEONE THAT WAS INVOLVED IN A ROBBERY GOT KILLED. |
| 6 | BUT, INTERESTINGLY ENOUGH, WE DO KNOW THAT THERE HAS BEEN A |
| 7 | MOVEMENT IN THIS CONSPIRACY TO TRY TO USE GUNS THAT LOOK REAL |
| 8 | THAT AREN'T ACTUALLY REAL. |
| 9 |      THE COURT:  ARE YOU OKAY?  DO YOU NEED TO SIT DOWN? |
| 10 |      MS. MARTIN:  THERE HAS BEEN A MOVEMENT AMONG CERTAIN |
| 11 | MEMBERS OF THE CONSPIRACY IN THE CONSPIRACY TO USE GUNS THAT ARE |
| 12 | BB GUNS OR REPLICAS THAT AREN'T REAL.  AND I THINK THAT'S |
| 13 | BECAUSE THERE'S SOME CONCERN ABOUT REALLY NOT WANTING ANYONE |
| 14 | ELSE TO GET KILLED.  AND I DON'T KNOW WHAT HAPPENED IN THE PAST. |
| 15 | WE ARE LOOKING INTO THAT TO TRY TO FIND OUT IF WE CAN CONNECT |
| 16 | THOSE DOTS, BUT THAT WAS VERY DISTURBING TO HEAR, AND I'M NOT |
| 17 | SURE WHAT THAT'S ABOUT. |
| 18 |    I JUST DON'T THINK GIVEN -- AND I AGREE WITH YOUR HONOR |
| 19 | AND PRETRIAL THAT GIVEN THIS RECORD OF JUST A STRING OF VIOLENT |
| 20 | CRIMES AND THEM CONTINUING UNTIL NOW THAT HE'S JUST TOO RISKY TO |
| 21 | LET HIM OUT IN THE COMMUNITY.  AND I DON'T THINK THERE ARE ANY |
| 22 | CONDITIONS THAT COULD KEEP THE COMMUNITY SAFE. |
| 23 |    JUST AGAIN TO TOUCH ON FLIGHT RISK, AS WELL, A LOT OF |
| 24 | THESE ROBBERIES -- ACTUALLY, ALL OF THESE ROBBERIES -- INVOLVED |
| 25 | VERY HIGH-VALUE ITEMS.  EITHER ROLEX WATCHES OR SOME TYPE OF |

1  EXPENSIVE JEWELRY, DIAMONDS, DIAMOND RINGS.  AND MY
2  UNDERSTANDING WAS THAT THEY WERE SELLING THESE ITEMS. SO LET'S
3  SAY SOMETHING WAS STOLEN THAT WAS WORTH APPROXIMATELY $90,000.
4  THEY MIGHT SELL IT AND GET $25,000 FOR IT, WHICH IS STILL A LOT
5  OF MONEY, EVEN THOUGH IT'S NOT THE FULL VALUE OF THE STOLEN
6  ITEM. WE DON'T KNOW EXACTLY WHERE THAT MONEY HAS GONE.
7           NOW, THERE ARE SOME VEHICLES WHICH WERE AT MR. ANDREWS'
8  RESIDENCE WHEN WE CONDUCTED A SEARCH WARRANT.  A PORSCHE
9  CAYENNE, WHICH I'M NOT SURE HOW HE PAID FOR THAT, GIVEN THAT
10 HE'S ON UNEMPLOYMENT.  THAT HE BOUGHT THAT FOR HIS GIRLFRIEND,
11 OR IN HIS GIRLFRIEND'S NAME.  AND I BELIEVE THERE WAS A SECOND
12 VEHICLE.
13          THE COURT:  THE SAME GIRLFRIEND WHO IS HERE?
14          MS. MARTIN:  YES, DANIELLE WILLIAMS.
15          AND BUT WE'RE NOT QUITE SURE WHERE ALL THE CASH THAT THEY
16 WERE PAID FOR THESE ITEMS WENT.  SO I AM CONCERNED, TOO, THAT
17 THERE MIGHT BE SOME CASH STOCKPILED SOMEWHERE.  IN ADDITION, MR.
18 ANDREWS TOLD THE AGENTS AT THE TIME THAT THEY SEARCHED HIS HOUSE
19 THAT HE HAD A GUN WHICH HE ALSO DISCUSSED IN RECORDED PHONE
20 CALLS HAVING GUNS.  BUT HE SAID THAT HE HAD A GUN THAT WAS IN
21 THE DOGHOUSE IN THE BACKYARD WRAPPED IN A TOWEL.  THE AGENTS
22 WENT OUT THERE AND LOOKED.  THERE WAS A TOWEL, BUT NO GUN.
23          MR. ANDREWS BELIEVES THAT HIS FRIENDS MAY HAVE PICKED UP
24 THE GUN.  SO THERE IS A GUN OUT THERE, TOO, THAT WE DON'T --
25 THAT BELONGS TO MR. ANDREWS THAT WE DON'T HAVE.  SO AT LEAST

| | |
|---|---|
| 1 | ONE.  AND ON THE TELEPHONE CONVERSATIONS THAT WE HAVE HE TALKS |
| 2 | ABOUT HAVING TWO GUNS. |
| 3 | SO, AGAIN, WE ARE CONCERNED THAT THERE MAY BE GUNS |
| 4 | SOMEWHERE, AS WELL, THAT HE MAY HAVE ACCESS TO. |
| 5 | THE COURT:  IS THAT IT? |
| 6 | MS. MARTIN:  THAT'S IT, YOUR HONOR, YES. |
| 7 | THE COURT:  YES.  THIS IS A PARTICULARLY TROUBLING |
| 8 | RECORD HERE THAT MR. ANDREWS HAS WHERE HE HAS SHOWN SINCE -- HIS |
| 9 | CRIMINAL HISTORY STARTS IN 1990, AND HE'S PRETTY MUCH BEEN IN |
| 10 | TROUBLE PROGRESSIVELY IN MORE SERIOUS WAYS EVER SINCE. |
| 11 | HE'S PROGRESSING IN HIS CRIMINAL CAREER AS OPPOSED TO |
| 12 | GOING BACK OR TRYING TO CUT DOWN.  HE'S GOTTEN WORSE.  AND THIS |
| 13 | PARTICULAR OFFENSE THAT'S HE'S HERE FOR TODAY DEMONSTRATES THAT |
| 14 | WHEN YOU TALK ABOUT THE SORT OF ELABORATE KIND OF CONSPIRACY |
| 15 | THAT WAS GOING ON TO VICTIMIZE PEOPLE USING CRAIGSLIST.  AND, |
| 16 | YOU KNOW, WE'VE GOT SIX FAILURES TO APPEAR.  YES, THEY ARE OLD. |
| 17 | AS THE GOVERNMENT POINTED OUT, THOUGH, HE DOES HAVE PROBATION |
| 18 | REVOCATIONS THAT ARE MORE RECENT. |
| 19 | HE'S GOT -- HE STARTS OFF HIS CRIMINAL CAREER WITH |
| 20 | MISDEMEANOR OFFENSES, SUCH AS VEHICLE THEFT, BATTERY, THEN |
| 21 | BURGLARY.  AND THEN, HE GRADUATES TO FELONY ROBBERY.  AND THAT |
| 22 | CONVICTION WAS ACTUALLY IN 1998. |
| 23 | THEN, HE'S GOT THE EVADING A POLICE OFFICER WITH DISREGARD |
| 24 | FOR SAFETY IN 2004, WHICH IS A FELONY.  THEN, ANOTHER FELONY |
| 25 | ROBBERY IN 2007.  AND THEN, IN 2009 GRAND THEFT, WHICH IS ALSO A |

1  FELONY.  SO NOW HE'S FACING ANOTHER VIOLENT ROBBERY, CONSPIRACY
2  KIND OF CHARGE.
3       AND WHAT THIS TELLS ME IS THAT MR. ANDREWS IS SORT OF
4  MAKING A CAREER OUT OF BEING A CRIMINAL AND COMMITTING VIOLENT
5  FELONIES.  AND WHILE I APPRECIATE EVERYBODY WHO IS OUT THERE IN
6  THE AUDIENCE FOR BEING HERE FOR HIM, AND I KNOW YOU ALL LOVE
7  HIM, CARE ABOUT HIM.  THAT, YOU KNOW, TENDS TO CLOUD JUDGMENT.
8  I HAVE A JOB TO DO HERE, AND THAT IS TO CONSIDER THE DANGER THAT
9  HE PRESENTS TO THE COMMUNITY.
10      AND IF HE HAD A DIFFERENT HISTORY, IF HE WASN'T FACING
11 THESE KIND OF CHARGES THAT HE'S FACING INVOLVING FURTHER VIOLENT
12 CRIMES INVOLVING FIREARMS AND VICTIMIZING MULTIPLE PEOPLE WITH
13 APPARENT PLANS TO CONTINUE TO VICTIMIZE FURTHER PEOPLE, IT MIGHT
14 BE DIFFERENT.  AND, YOU KNOW, I DO APPRECIATE THE FACT THAT HE
15 WAS COOPERATIVE WITH LAW ENFORCEMENT.  BUT, YOU KNOW, AT THAT
16 POINT HE WAS CAUGHT.  AND SO THE NATURE AND CIRCUMSTANCES OF
17 THIS OFFENSE ARE JUST -- THEY ARE JUST TERRIBLE.
18      AND I DON'T SEE ANYTHING THAT I COULD POSSIBLY DO OTHER
19 THAN TO ALLOW SEVEN PEOPLE TO PUT THEIR FINANCIAL FUTURES ON THE
20 LINE IN VAIN.  I DON'T BELIEVE THAT THAT WOULD HELP MITIGATE THE
21 DANGER TO THE COMMUNITY AT ALL.  AND I ALSO NOTE THAT THE
22 DEFENDANT HAS TWO ALTERNATE DATES OF BIRTH AND SIX SOCIAL
23 SECURITY NUMBERS.  SO, YOU KNOW, THESE THINGS ARE VERY
24 INCONSISTENT WITH THE PICTURE THAT IS PAINTED OF WHO HE COULD
25 HAVE POTENTIALLY DECIDED TO BE, WHICH IS HE COULD HAVE

| | |
|---|---|
| 1 | POTENTIALLY DECIDED TO CONTINUE TO WORK AS A HAZMAT WORKER AND |
| 2 | MAYBE TAKE ADVANTAGE OF FUTURE OPPORTUNITIES TO DO SO IN |
| 3 | OAKLAND.  HOWEVER, HE'S CHOSEN TO CONTINUE TO BE IN TROUBLE |
| 4 | HERE. |
| 5 | AND HE HAS ADMITTED -- IT'S NOT LIKE, YOU KNOW, HE IS |
| 6 | DENYING THESE ALLEGATIONS.  HE'S ADMITTED THESE THINGS SO LAW |
| 7 | ENFORCEMENT.  SO I DO NOT SEE THAT THERE ARE ANY CONDITIONS OR |
| 8 | COMBINATIONS OF CONDITIONS THAT I CAN IMPOSE TO MITIGATE THE |
| 9 | RISK OF DANGER TO THE COMMUNITY, AND HE WILL BE DETAINED FOR |
| 10 | TRIAL IN THIS CASE. |
| 11 | SO WE JUST NEED TO SET HIS NEXT REPORT DATE.  AND THAT |
| 12 | WOULD BE -- I'M SORRY. |
| 13 | MADAM CLERK, WE NEED TO SCHEDULE IT FOR PRELIMINARY |
| 14 | HEARING OR ARRAIGNMENT WITHIN THE NEXT -- WHAT'S THE 14TH DAY? |
| 15 | MS. MARTIN:  THE 14TH DAY IS FEBRUARY 13TH, ALTHOUGH I |
| 16 | BELIEVE THAT WE -- |
| 17 | MS. LEONIDA:  COULD I HAVE A MOMENT TO TALK TO THE |
| 18 | GOVERNMENT, YOUR HONOR? |
| 19 | THE COURT:  UM-HUM. |
| 20 | (COUNSEL CONFER.) |
| 21 | MS. LEONIDA:  YOUR HONOR, IF WE COULD HAVE THE 20TH FOR |
| 22 | PRELIMINARY HEARING OR ARRAIGNMENT, AND WE'LL -- I BELIEVE THAT |
| 23 | TIME IS NECESSARY FOR EFFECTIVE PREPARATION AND WE'LL WAIVE THE |
| 24 | RIGHT TO PRELIMINARY HEARING TO THE EXTENT NECESSARY TO PUT THIS |
| 25 | MATTER ON THE 20TH. |

```
 1              THE COURT:  IS THE 20TH BEYOND THE 14 DAYS?
 2              MS. LEONIDA:  IT IS.
 3              MS. MARTIN:  IT IS, YOUR HONOR.
 4              THE COURT:  IT IS.  SO YOU ARE GOING TO -- DEFENDANT IS
 5     WAIVING HIS RIGHT UNDER 5.1?
 6              MS. LEONIDA:  YES, YOUR HONOR.
 7              THE COURT:  ARE YOU EXCLUDING TIME, TOO, MS. MARTIN?
 8              MS. MARTIN:  YES.  I BELIEVE THAT -- SO THE
 9     GOVERNMENT'S GOING TO BE PROVIDING DISCOVERY IN THIS CASE, SOME
10     TODAY AND SOME ON MONDAY.  SO AS SOON AS POSSIBLE.  AND I
11     BELIEVE FOR THAT REASON TIME SHOULD ALSO APPROPRIATELY BE
12     EXCLUDED UNDER THE SPEEDY TRIAL ACT BETWEEN NOW AND FEBRUARY
13     20TH FOR EFFECTIVE PREPARATION OF COUNSEL.
14              MS. LEONIDA:  AND I AGREE.
15              THE COURT:  ALL RIGHT.  BASED ON THE STIPULATION OF THE
16     PARTIES, AND GIVEN THAT THE GOVERNMENT IS IN THE PROCESS OF
17     PROVIDING DISCOVERY TO DEFENSE, AND GIVEN THAT THE DEFENDANT HAS
18     WAIVED HIS RIGHTS UNDER RULE 5.1, I WILL EXCLUDE TIME BETWEEN
19     NOW AND FEBRUARY 20TH FOR EFFECTIVE PREPARATION OF COUNSEL UNDER
20     THE SPEEDY TRIAL ACT.
21              MS. MARTIN:  THANK YOU, YOUR HONOR.
22              THE COURT:  OKAY.
23           ARE YOU RAISING YOUR HAND?  OKAY.
24              UNIDENTIFIED SPEAKER:  YES.
25              THE COURT:  OKAY.
```

```
 1              UNIDENTIFIED SPEAKER:  CAN HE BE UNDER HOUSE ARREST?
 2   WOULD HE STILL BE CONSIDERED A DANGER TO SOCIETY?  I MEAN, YOU
 3   KNOW --
 4              THE COURT:  YES, I CONSIDERED ALL THOSE THINGS.
 5              UNIDENTIFIED SPEAKER:  OKAY.
 6              THE COURT:  AND I'VE ALREADY MADE MY RULING.
 7              UNIDENTIFIED SPEAKER:  I UNDERSTAND.
 8              MS. MARTIN:  THANK YOU, YOUR HONOR.
 9              THE CLERK:  COURT IS IN RECESS.
10              (THEREUPON, THIS HEARING WAS CONCLUDED.)
```

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTIONS IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

SIGNATURE OF TRANSCRIBER

*Kathy Wyatt*                    4-9-15 DATE