ORIGINAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CHANGE OF PLEA |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. CR 14-00094YGR |
| | ) | |
| CLARENCE LEE ANDREWS, | ) | PAGES 1 - 40 |
| | ) | |
| DEFENDANT. | ) | OAKLAND, CALIFORNIA |
| | ) | FRIDAY, MARCH 14, 2014 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF: MELINDA L. HAAG, ESQ.
UNITED STATES ATTORNEY
1301 CLAY STREET, SUITE 340-S
OAKLAND, CALIFORNIA 94612
BY: BRIGID S. MARTIN,
ASSISTANT UNITED STATES ATTORNEY

FOR DEFENDANT: BARRY J. PORTMAN
FEDERAL PUBLIC DEFENDER
555 - 12TH STREET, SUITE 650
OAKLAND, CALIFORNIA 94607-3627
BY: ELLEN V. LEONIDA,
ASSISTANT FEDERAL PUBLIC DEFENDER

REPORTED BY: RAYNEE H. MERCADO
CSR. NO. 8258

PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY; TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

FRIDAY, MARCH 14, 2014 11:39 A.M.

P R O C E E D I N G S

**THE CLERK:** CALLING CRIMINAL ACTION 14-0094, UNITED STATES VERSUS CLARENCE ANDREWS.

COUNSEL, PLEASE STATE YOUR APPEARANCES.

**MS. MARTIN:** GOOD MORNING, YOUR HONOR. BRIGID MARTIN FOR THE UNITED STATES.

**MS. LEONIDA:** GOOD MORNING, YOUR HONOR. ELLEN LEONIDA FOR MR. ANDREWS. HE'S PRESENT IN CUSTODY.

**THE COURT:** MR. ANDREWS, GOOD MORNING.

**THE DEFENDANT:** GOOD MORNING.

**THE COURT:** I UNDERSTAND FROM YOUR ATTORNEY, SIR, THAT YOU WOULD LIKE TO CHANGE YOUR PLEA TODAY FROM NOT GUILTY TO GUILTY; IS THAT CORRECT?

**THE DEFENDANT:** YES, MA'AM.

**THE COURT:** ALL RIGHT. THERE'S SOME INDIVIDUALS IN THE COURTROOM RIGHT NOW. DO YOU KNOW THEM?

LOOK IN THE BACK. DO YOU KNOW THOSE PEOPLE?

**MS. LEONIDA:** THEY WORK FOR THE GOVERNMENT, YOUR HONOR.

**THE COURT:** OKAY.

**MS. MARTIN:** AND, YOUR HONOR, JUST AS A PRELIMINARY MATTER, BECAUSE OF THE EVENTS OF -- OF YESTERDAY AND WHAT'S HAPPENING IN THE CASE NOW, THERE ARE ITEMS THAT MAY BE UNSEALED, AND THE GOVERNMENT WOULD MOVE TO UNSEAL SOME OF THE

ITEMS IN THIS CASE, SO JUST FOR PURPOSES OF PUTTING ON THE RECORD, THE GOVERNMENT MOVES TO UNSEAL THE INDICTMENT IN THIS CASE, AND THE GOVERNMENT ALSO MOVES TO UNSEAL THE NOTICE OF RELATED CASES, WHICH HAS NOT YET BEEN GRANTED, AND ANY MOTION TO SEAL THE MOTION OF RELATED CASES AND PROPOSED ORDER, AND THEN EVERYTHING FROM YESTERDAY'S HEARING ON MARCH 13TH THROUGH THE FUTURE.

THERE ARE A FEW ITEMS -- OR -- REMAINING ITEMS IN THIS CASE WHICH THE GOVERNMENT'S NOT MOVING TO UNSEAL BECAUSE THEY DO CONTAIN SENSITIVE INFORMATION RELATED TO AN ONGOING INVESTIGATION.

BUT THE OTHER ITEMS THAT I'VE MENTIONED MAY BE UNSEALED AT THIS TIME.

**THE COURT:** ALL RIGHT. THOSE MOTIONS TO UNSEAL ARE GRANTED.

SOMEBODY TELL ME ABOUT THIS CASE.

**MS. MARTIN:** SO, YOUR HONOR, THIS CASE INVOLVES A CONSPIRACY WITH A NUMBER OF INDIVIDUALS TO ROB VICTIMS WHO HAVE PLACED JEWELRY ITEMS FOR SALE ON CRAIGSLIST. THEY'RE VICTIMS FROM ALL OVER THE COUNTRY, SOME IN CALIFORNIA, SOME OUTSIDE OF CALIFORNIA. AND THE VICTIMS ARE IDENTIFIED BY COCONSPIRATORS, LURED INTO THE BAY AREA, AND THEN ROBBED OF THE ITEMS, OR WERE -- THEY TRIED TO ROB THEM OF THE ITEMS.

THERE WERE MANY ROBBERIES THAT OCCURRED. THERE ARE INDIVIDUALS THAT ARE CHARGED IN OTHER CASES IN THIS DISTRICT

WHICH ARE -- ARE SEPARATE FROM THIS ONE FOR -- BECAUSE PART OF THE INVESTIGATION IS STILL ONGOING, SO --

FOR EXAMPLE, THERE ARE A FEW INDIVIDUALS CHARGED WITH A ROBBERY ON JUNE 20TH. THAT IS A PART OF THE OVERALL CONSPIRACY, NOT A SPECIFIC ROBBERY THAT THIS DEFENDANT WAS INVOLVED IN. AND THERE ARE DEFENDANTS IN THAT ROBBERY, FOR EXAMPLE, THAT WEREN'T INVOLVED IN OTHER ROBBERIES.

SO THERE HAS BEEN SOME PARSING. THERE'S ALSO -- HAS BEEN DIFFERENCE IN STATUS IN SOME OF THESE CASES BECAUSE UP UNTIL YESTERDAY -- FOR EXAMPLE, IN THIS CASE, WE HAD REASON TO THINK THAT WE MIGHT WANT TO KEEP THIS CASE UNDER SEAL. HOWEVER, BECAUSE THE DEFENDANT WOULD LIKE TO PLEAD OPEN NOW, THAT REASON NO LONGER EXISTS.

**THE COURT:** THE NOTICE OF RELATED CASES THAT YOU REFERENCED, WHO IS THAT NOTICE FILED WITH? WHO HAS THE LOWEST NUMBERED CASE?

**MS. MARTIN:** JUDGE WHITE, YOUR HONOR.

**THE COURT:** AND WHEN DID THAT GET FILED?

**MS. MARTIN:** THAT GOT FILED ON --

**MS. LEONIDA:** I THINK MONDAY?

**MS. MARTIN:** YES, I THINK IT WAS MONDAY. I HAVE -- IT WAS -- IT'S DATED MARCH 10TH. HOWEVER, I DON'T KNOW IF IT GOT FILED UNTIL MARCH -- YEAH, MONDAY MARCH 10TH.

**THE COURT:** HE'S NOT YET RULED ON THAT?

**MS. MARTIN:** HE HAS NOT, YOUR HONOR. THE GOVERNMENT

ALSO DOES PLAN, BECAUSE OF THE DEFENDANT'S DEMAND TO PLEAD IMMEDIATELY, AFTER THE DEFENDANT DOES COMPLETE HIS PLEA, THE GOVERNMENT DOES PLAN TO FILE AN ADDITIONAL NOTICE TO JUDGE WHITE LETTING HIM KNOW THAT OUR EARLIER STATEMENT THAT JUDICIAL ECONOMY WOULD BE SERVED BY RELATING THE CASES NO LONGER EXISTS BECAUSE THE DEFENDANT IS PLEADING.

**THE COURT:** IS THAT THE REASON HE'S PLEADING SO QUICKLY, MS. LEONIDA?

**MS. LEONIDA:** YOUR HONOR, THERE ARE MANY REASONS THAT MR. ANDREWS IS PLEADING. HE IS EAGER TO ACCEPT RESPONSIBILITY FOR HIS CONDUCT. HE IS, LIKE MANY DEFENDANTS, MISERABLE AT THE COUNTY JAIL AND VERY ANXIOUS TO SPEED THE PROCESS ALONG THE WAY.

**THE COURT:** WELL, IT'S INTERESTING FOR ME TO KNOW THAT YOU'D RATHER PLEAD IN FRONT OF ME THAN JUDGE WHITE. MAYBE I'LL TAKE THAT INTO CONSIDERATION.

**MS. MARTIN:** YOUR HONOR, THERE'S ONE MORE ITEM THAT I WANTED TO RAISE BEFORE WE CONTINUE WITH THE DEFENDANT'S PLEA THIS MORNING. AND THAT'S JUST TO PUT ON THE RECORD AND TO ALSO LET THE DEFENDANT KNOW THAT HE SHOULD NOT BE DOING THESE TYPES OF THINGS ANYMORE. THIS MORNING THE DEFENDANT ATTEMPTED TO GIVE AN UNDER SEAL COMPLAINT AFFIDAVIT TO A COCONSPIRATOR IN THIS CASE WHO HAPPENED TO BE HERE ON ANOTHER -- ON THE RELATED CASE THIS MORNING.

MY UNDERSTANDING IS THAT THE DEFENDANT'S ATTORNEY HAS

SPOKEN WITH HIM AND THAT THIS WON'T HAPPEN AGAIN, BUT THIS IS EXTREMELY SERIOUS CONDUCT. AND I JUST WANTED TO BRING IT TO THE COURT'S ATTENTION AND MAKE SURE THAT HE KNOWS ON THE RECORD THAT THIS IS NOT CONDUCT THAT HE SHOULD BE ENGAGING IN.

**THE COURT:** LET'S PUT THE DEFENDANT UNDER OATH.

MS. LEONIDA, MOVE TO THE SIDE SO HE CAN BE IN FRONT OF THE MICROPHONE, PLEASE.

(DEFENDANT SWORN.)

**THE COURT:** MR. ANDREWS?

**THE DEFENDANT:** YES.

**THE COURT:** DID YOU ATTEMPT TO GIVE SOMEONE AN UNDERSEAL DOCUMENT?

**THE DEFENDANT:** YES, MA'AM.

**THE COURT:** WHY?

**THE DEFENDANT:** I JUST -- IT WAS JUST A COPY. HE ASKED ME COULD HE SEE IT. AND -- THIS WAS YESTERDAY WHEN WE CAME. AND I SAID I'D BRING IT THIS MORNING, AND I HANDED IT TO THE -- THE MARSHAL HERE. I DIDN'T -- I DIDN'T REALIZE THAT IT WAS, YOU KNOW, THAT SERIOUS. I REALLY DIDN'T. I'M USED TO STATE PROCEDURES, AND, YOU KNOW, THEY AREN'T AS -- I'VE NEVER BEEN UNDER A SEALED DOCUMENT THING AND, YOU KNOW, HOW THAT GOES.

**THE COURT:** DID IT SAY "UNDER SEAL"?

**THE DEFENDANT:** I CAN'T REMEMBER IF IT SAID THAT ON THAT PAPERWORK.

**MS. MARTIN:** THE PAPERWORK THAT -- IS RIGHT HERE THAT HE HANDED TO THE OTHER DEFENDANT, AND IT DOES NOT HAVE THE COVER SHEET ON IT THAT'S STAMPED "UNDER SEAL," BUT THE COVER SHEET WAS STAMPED "UNDER SEAL."

AND THE DEFENDANT WAS IN COURT WHEN THE GOVERNMENT -- I MEAN, EVERYTHING HAS BEEN UNDER SEAL UP UNTIL YESTERDAY, AND THE GOVERNMENT DID -- WAS IN COURT WITH THE DEFENDANT WHEN WE MOVED TO UNSEAL THE COMPLAINT FOR THE LIMITED PURPOSE OF ALLOWING THE -- THE DEFENSE TO HAVE A COPY OF IT, SO HE -- HE SHOULD HAVE KNOWN.

AND THERE WERE ALSO NOTATIONS ON IT. I'M NOT SURE WHAT THEY MEAN. THERE WERE PORTIONS THAT ARE SHADED. THERE ARE DASHED LINES ON A FEW LINES, AND THERE'S AN ASTERISK, SO I'M NOT SURE IF HE WAS ATTEMPTING TO POINT OUT CERTAIN PORTIONS OF THE AFFIDAVIT. I DON'T KNOW. BUT THERE ARE NOTATIONS OR -- ON THE -- ON THE DOCUMENT AS WELL.

**THE DEFENDANT:** CAN I SAY SOMETHING? MA'AM, IF IT MATTERS AT ALL, I WAS TAKING NOTE FROM HER. I HAD THIS FOR A WHILE. HE JUST -- I JUST SEEN HIM YESTERDAY, LIKE I SAID. AND I -- I DIDN'T KNOW IT'S THIS SERIOUS.

**THE COURT:** MR. ANDREWS, IN THE FUTURE, I WOULD SUGGEST THAT YOU DON'T DO ANYTHING WITHOUT THE -- TALKING TO YOUR LAWYER.

**THE DEFENDANT:** YES, MA'AM.

**THE COURT:** YOU CAN GET IN SERIOUS TROUBLE. YOU

UNDERSTAND?

**THE DEFENDANT:** YES, MA'AM.

**THE COURT:** ALL RIGHT.

DO YOU UNDERSTAND, MR. ANDREWS, THAT YOU ARE UNDER OATH?

**THE DEFENDANT:** YES.

**THE COURT:** AND THAT MUST -- AND THAT MEANS THAT YOU MUST TELL ME THE TRUTH IN ANSWER TO MY QUESTIONS. YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT IF YOU FAIL TO TELL THE TRUTH, YOU CAN BE CHARGED WITH ADDITIONAL CRIMES BY THE U.S. ATTORNEY'S OFFICE WHICH WILL CARRY ADDITIONAL PENALTIES THAN THE ONES WE ARE SPEAKING OF TODAY?

YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES, MA'AM.

**THE COURT:** DURING OUR DISCUSSION TODAY, IF AT ANY TIME YOU'D LIKE TO TALK TO YOUR LAWYER, LET ME KNOW SO THAT I CAN GIVE YOU AN OPPORTUNITY TO DO SO.

IS THAT AGREED?

**THE DEFENDANT:** YES.

**THE COURT:** ALSO AS YOU CAN SEE, THERE IS A COURT REPORTER OVER HERE. SHE'S TYPING DOWN EVERYTHING THAT IS SAID IN THE COURTROOM. THAT MEANS THAT SHE CANNOT TYPE DOWN GESTURES. SHE CAN ONLY TYPE DOWN WORDS, SO YOU MUST USE WORDS IN RESPONSE TO MY QUESTIONS.

AGREED?

**THE DEFENDANT:** YES.

**THE COURT:** LOOKS LIKE YOU ARE 39. IS THAT RIGHT?

**THE DEFENDANT:** YES.

**THE COURT:** WHERE DID YOU GO TO -- WHERE -- WHERE WERE YOU BORN?

**THE DEFENDANT:** BERKELEY, CALIFORNIA.

**THE COURT:** AND WHEN DID YOU GET YOUR HIGH SCHOOL DEGREE?

**THE DEFENDANT:** CASTLEMONT IN OAKLAND.

**THE COURT:** WHERE ARE YOU ATTENDING YOUR ONE YEAR OF COLLEGE?

**THE DEFENDANT:** MERRITT.

**THE COURT:** I HAVE IN MY HAND YOUR APPLICATION FOR PERMISSION TO ENTER A PLEA OF GUILTY. IS THAT YOUR HANDWRITING ON THIS DOCUMENT ON THE FRONT PAGE? THAT'S OKAY.

IS IT YOUR HANDWRITING, OR IS IT YOUR ATTORNEY'S?

**THE DEFENDANT:** BELIEVE IT'S MY ATTORNEY IF IT'S NOT MINE. I CAN'T SEE THAT FAR.

**THE COURT:** YOU CAN'T SEE IT. LET ME SEND IT BACK TO YOU.

**THE DEFENDANT:** IT'S MY ATTORNEY'S.

**THE COURT:** OKAY.

CAN YOU READ AND WRITE ENGLISH, THOUGH? CAN YOU READ AND WRITE ENGLISH?

**THE DEFENDANT:** YES, MA'AM.

**THE COURT:** WITHIN THE PAST 24 HOURS, HAVE YOU TAKEN ANY MEDICATIONS?

**THE DEFENDANT:** NO.

**THE COURT:** HAVE YOU HAD ANY ALCOHOLIC BEVERAGES?

**THE DEFENDANT:** NO.

**THE COURT:** HAVE YOU HAD ANY DRUGS, WHETHER LEGAL OR NOT?

**THE DEFENDANT:** NO.

**THE COURT:** IS THERE ANY REASON WHY YOU COULD NOT UNDERSTAND WHAT IS HAPPENING IN COURT TODAY?

**THE DEFENDANT:** NO.

**THE COURT:** DO YOU UNDERSTAND THAT THE U.S. ATTORNEY, BECAUSE YOU ARE UNDER OATH, IS ABLE TO USE ANY STATEMENT YOU MAKE TODAY AGAINST YOU?

**THE DEFENDANT:** YES.

**THE COURT:** BY ASKING ME TO ALLOW YOU TO CHANGE YOUR PLEA FROM NOT GUILTY TO GUILTY, MR. ANDREWS, YOU ARE GIVING UP A NUMBER OF CONSTITUTIONAL RIGHTS, PARTICULARLY THOSE RELATED TO YOUR RIGHT TO TRIAL.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** YOU ARE WAVING ALL OF YOUR TRIAL RIGHTS.

DO YOU UNDERSTAND?

**THE DEFENDANT:** YES.

**THE COURT:** WE WILL GO THROUGH THOSE, BUT I WANT YOU TO UNDERSTAND THE BIG PICTURE HERE.

DO YOU UNDERSTAND THERE WILL BE NO TRIAL?

**THE DEFENDANT:** YES.

**THE COURT:** SO DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO CONTINUE WITH YOUR NOT GUILTY PLEA?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THE RIGHT THAT YOU HAVE, THAT YOU HAVE A RIGHT TO A SPEEDY, PUBLIC TRIAL BY A JURY?

**THE DEFENDANT:** YES.

**THE COURT:** AND THAT THAT MEANS THAT 12 INDIVIDUALS MUST UNANIMOUSLY AGREE THAT YOU ARE GUILTY BEYOND A REASONABLE DOUBT OF EACH AND EVERY ELEMENT OF EACH AND EVERY CRIME THAT IS BROUGHT AGAINST YOU IN ORDER FOR YOU TO BE FOUND GUILTY?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO HAVE AN ATTORNEY REPRESENT YOU AT ALL STAGES OF THE PROCEEDINGS?

**THE DEFENDANT:** YES.

**THE COURT:** THAT IS, TRIAL AND ANY OTHER PROCEEDING.

DO YOU UNDERSTAND?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO HAVE THE COURT APPOINT AN ATTORNEY TO REPRESENT YOU IN THE

EVENT THAT YOU CANNOT AFFORD ONE?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THE RIGHT THAT YOU -- YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REPRESENT YOURSELF WITH THE COURT'S PERMISSION IF YOU SO CHOOSE?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT AT TRIAL, YOU ARE PRESUMED TO BE INNOCENT?

YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** AND THAT MEANS THAT IT IS THE BURDEN OF THE UNITED STATES TO PROVE THEIR CASE BEYOND A REASONABLE DOUBT AND TO BRING IN EVIDENCE, WITNESSES, DOCUMENTS, ANY OTHER KIND OF PHYSICAL EVIDENCE TO PROVE THEIR CASE.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT YOU THEN HAVE THE RIGHT TO SEE, CONFRONT, AND CROSS-EXAMINE ALL OF THE EVIDENCE BROUGHT IN AGAINST YOU?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REMAIN SILENT?

**THE DEFENDANT:** YES.

**THE COURT:** AND THAT MEANS THAT NO ONE CAN FORCE YOU TO TESTIFY AGAINST YOURSELF.

**THE DEFENDANT:** YES.

**THE COURT:** YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO TESTIFY IF YOU SO CHOOSE?

**THE DEFENDANT:** YES.

**THE COURT:** YOU HAVE THE RIGHT TO PRESENT EVIDENCE IF YOU CHOOSE?

**THE DEFENDANT:** YES.

**THE COURT:** YOU HAVE THE RIGHT TO USE THE POWER OF THE GOVERNMENT TO COMPEL THE PRODUCTION OF WITNESSES, DOCUMENTS, AND EVIDENCE TO HELP YOU IN YOUR DEFENSE.

**THE DEFENDANT:** YES.

**THE COURT:** BUT YOU ALSO HAVE THE RIGHT TO SIT THERE AND SAY NOTHING BECAUSE YOU HAVE NO BURDEN IN A TRIAL.

DO YOU UNDERSTAND?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT IF YOU CHANGE YOUR PLEA, THERE WILL BE, THEN, NO TRIAL?

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** AND IF THERE'S NO TRIAL, THEN YOU WILL HAVE NO RIGHT TO APPEAL ANY JURY VERDICT BECAUSE THERE WILL BE NO JURY VERDICT.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** AS PART OF YOUR APPLICATION, FOR PURPOSES

OF THE RECORD, THIS IS A SEVEN-PAGE DOCUMENT WITH A SUPPLEMENT. I'M GOING TO HAND THIS BACK TO YOU SO YOU CAN SEE IT AGAIN.

ON PAGE 2 -- I MEAN -- EXCUSE ME. ON PAGE 6, THERE ARE TWO SIGNATURES. THEY'RE TOTALLY ILLEGIBLE SO I'M GOING TO ASK YOU BOTH TO PRINT THE NAME ON THE BOTTOM, BOTH -- MR. ANDREWS, CONFIRM FOR ME THAT THAT'S YOUR SIGNATURE AND THEN PRINT YOUR NAME UNDERNEATH.

AND, MS. LEONIDA AS WELL, CONFIRM FOR ME THAT'S YOUR SIGNATURE AND PRINT YOUR NAME UNDERNEATH.

AND THE SAME GOES FOR THE SUPPLEMENT. THERE IS A SIGNATURE THAT IS ILLEGIBLE ON THE FRONT AND THE SECOND PAGE, THE CERTIFICATION OF COUNSEL'S NOT SIGNED. IT NEEDS TO BE SIGNED.

(PAUSE IN THE PROCEEDINGS.)

**THE COURT:** MS. MARTIN, WHILE THEY'RE DOING THAT, HAVE YOU SEEN -- WERE YOU PROVIDED WITH A COPY OF THE APPLICATION AND SUPPLEMENT?

**MS. MARTIN:** I WAS, YOUR HONOR. I'VE -- DID NOT GET A CHANCE TO GO OVER IT IN DETAIL BEFORE NOW.

**THE COURT:** SO, MR. ANDREWS --

I'LL COME BACK TO YOU, MS. MARTIN.

MR. ANDREWS, IS THAT YOUR -- SO CAN YOU CONFIRM FOR ME THAT THIS IS YOUR SIGNATURE ON THE APPLICATION AND THE SUPPLEMENT?

**THE DEFENDANT:** YES.

**THE COURT:** MS. LEONIDA, WILL YOU CONFIRM FOR ME THAT IS YOUR SIGNATURE ON THE APPLICATION AND SUPPLEMENT?

**MS. LEONIDA:** YES.

**THE COURT:** MR. ANDREWS, BEFORE SIGNING THIS DOCUMENT, DID YOU READ EACH AND EVERY PARAGRAPH?

**THE DEFENDANT:** IT WAS READ TO ME VERBATIM THROUGH THE --

**THE COURT:** OKAY. DID YOU HAVE AN OPPORTUNITY TO ASK ANY QUESTIONS THAT YOU MAY HAVE HAD OF YOUR ATTORNEY WHEN YOU -- WHEN YOU REVIEWED THE DOCUMENT WITH HER?

**THE DEFENDANT:** YES.

**THE COURT:** WITHOUT TELLING ME ANYTHING THAT WAS SAID, WERE YOUR QUESTIONS ANSWERED?

**THE DEFENDANT:** YES.

**THE COURT:** MS. LEONIDA, CAN YOU ASSURE ME THAT THE DEFENDANT UNDERSTANDS THE RIGHTS HE IS WAIVING AS PART OF THIS APPLICATION?

**MS. LEONIDA:** YES, YOUR HONOR.

**THE COURT:** THIS APPLICATION IDENTIFIES, AT LEAST FROM THE PERSPECTIVE OF THE DEFENDANT, THEIR VIEW AS TO THE CONSEQUENCES OF A PLEA OF GUILTY AND THE ELEMENTS OF EACH OF THE CHARGES THAT WERE BROUGHT AGAINST THE DEFENDANT.

HAVE YOU HAD AN OPPORTUNITY TO REVIEW THOSE, MS. MARTIN?

**MS. MARTIN:** I HAVE, YOUR HONOR.

**THE COURT:** DO YOU HAVE ANY COMMENTS?

**MS. MARTIN:** AS FAR AS THE DEFENDANT'S APPLICATION GOES, WITH REGARD TO THE CHARGES AGAINST HIM AND THE ELEMENTS THAT NEED TO BE PROVEN, BECAUSE THIS IS SECTION 1951(A), WHICH IS SPECIFICALLY CONSPIRACY TO COMMIT ROBBERY AFFECTING INTERSTATE COMMERCE AND NOT CONSPIRACY IN GENERAL, IT IS CORRECT THAT THE DEFENDANT NEEDED TO AGREE WITH AT LEAST ONE OTHER PERSON TO CONSPIRE TO ESSENTIALLY COMMIT ROBBERY, WHICH IS OBTAINING PROPERTY FROM ANOTHER PERSON WITHOUT CONSENT, USING THREATENED FORCE, VIOLENCE, OR FEAR.

HOWEVER, THERE IS ALSO THE ADDITIONAL ELEMENT OF -- THAT AS A RESULT OF THAT, THAT COMMERCE IN ONE STATE TO ANOTHER WAS OR WOULD HAVE BEEN AFFECTED IN SOME WAY, SO WE DO STILL NEED THE INTERSTATE COMMERCE NEXUS ON PARAGRAPH 5 FOR THERE TO BE AN ADEQUATE FACTUAL BASIS.

**THE COURT:** MS. LEONIDA?

**MS. LEONIDA:** I APOLOGIZE, YOUR HONOR. I LISTED THE ELEMENTS IN THE SUPPLEMENT FOR CONSPIRACY AND NOT THE INTERSTATE COMMERCE ELEMENT, BUT I AGREE THAT THIS IS A NECESSARY ELEMENT. AND IT'S NOT IN DISPUTE HERE.

(PAUSE IN THE PROCEEDINGS.)

**THE COURT:** OKAY. THEN I WANT THESE TO BE SUPPLEMENTED AND INITIALED.

DO YOU NEED A FEW MINUTES TO TALK TO YOUR CLIENT?

**MS. LEONIDA:** NOT VERY LONG, YOUR HONOR. WE HAVE

DISCUSSED THE INTERSTATE COMMERCE ELEMENT WHEN WE DISCUSSED THE CASE GENERALLY, SO I DON'T THINK WE NEED VERY MUCH TIME.

(PAUSE IN THE PROCEEDINGS.)

**THE COURT:** SO, MS. LEONIDA, IN THE FUTURE, THIS IS WHY I DON'T GENERALLY RUSH OPEN PLEAS.

**MS. LEONIDA:** I UNDERSTAND, YOUR HONOR.

**THE COURT:** SO THAT EVERYBODY UNDERSTANDS AND IS ON THE SAME PAGE WITH RESPECT TO THOSE ELEMENTS. IT'S ALSO THE REASON I HAVE MY OWN SUPPLEMENT. IT'S NOT GENERALLY USED.

OKAY. SO LET'S GO OVER THESE -- MR. ANDREWS, AND I WILL NOTE FOR THE RECORD IT DID LOOK LIKE THE -- MS. MARTIN AND MS. LEONIDA CONFERRED, YES, ON THE CONTENT?

**MS. LEONIDA:** YES, YOUR HONOR.

**MS. MARTIN:** YES, YOUR HONOR.

**THE COURT:** OKAY.

SO, MR. ANDREWS, YOU HAVE BEEN CHARGED IN THE INDICTMENT WITH ONE COUNT OF A VIOLATION OF TITLE 18 OF THE UNITED STATES CODE AT SECTION 1951 SUBSECTION A, CONSPIRACY TO COMMIT ROBBERY AFFECTING INTERSTATE COMMERCE.

IN ORDER FOR YOU TO BE FOUND GUILTY OF THIS OFFENSE, THE PROSECUTION MUST PROVE BEYOND A REASONABLE DOUBT EACH OF THE FOLLOWING: ONE, THAT THERE WAS AN AGREEMENT BETWEEN TWO OR MORE PERSONS TO COMMIT ROBBERY.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** TWO, THAT THE DEFENDANT BECAME A MEMBER OF THE CONSPIRACY KNOWING AT LEAST ONE OF ITS OBJECTS AND INTENDING TO HELP ACCOMPLISH IT.

UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** AND THREE, THAT THE ROBBERY DID OR HAD THE POTENTIAL TO IMPACT INTERSTATE COMMERCE.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** THE PENALTIES FOR A VIOLATION OF THIS CODE SECTION ARE AS FOLLOWS: ONE, A MAXIMUM PRISON SENTENCE OF 20 YEARS.

DO YOU UNDERSTAND?

**THE DEFENDANT:** YES.

**THE COURT:** A MAXIMUM TERM OF SUPERVISED RELEASE OF THREE YEARS.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** A MANDATORY SPECIAL ASSESSMENT OF $100, WHICH THE COURT IS OBLIGED TO IMPOSE.

DO YOU UNDERSTAND?

**THE DEFENDANT:** YES.

**THE COURT:** AND A MAXIMUM FINE OF $250,000.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** DO YOU UNDERSTAND THAT TO THE EXTENT THAT THERE IS ANY NEED FOR FORFEITURE, THE COURT HAS THE POWER TO SO ORDER. AND I UNDERSTAND, ACCORDING TO THE INDICTMENT, THAT THERE IS A FORFEITURE ALLEGATION WITH RESPECT TO -- WELL, IT DOESN'T IDENTIFY ANYTHING IN PARTICULAR, BUT ANY PROCEEDS TRACEABLE TO THE ROBBERY.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** THE COURT ALSO HAS THE AUTHORITY TO ORDER RESTITUTION IF APPROPRIATE.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** MR. ANDREWS, I ALSO NEED TO MAKE SURE THAT THERE IS AN INDEPENDENT FACTUAL BASIS UPON WHICH A PLEA OF GUILTY WOULD BE APPROPRIATE. SO I NEED YOU TO TELL ME IN YOUR OWN WORDS WHAT YOU DID AND WHY YOU THINK YOU'RE GUILTY OF THIS OFFENSE.

**THE DEFENDANT:** WELL, IT'S ACCORDING TO THE --

**THE COURT:** NO, I WANT YOU TO TELL ME IN YOUR OWN WORDS.

**THE DEFENDANT:** OH, OKAY. I'M SORRY. WELL, 'CAUSE I HAD SPOKEN -- TALKED TO SOMEONE ABOUT COMMITTING THIS HERE CRIME. AND SO --

**THE COURT:** TELL ME WHAT HAPPENED. YOU KNOW MORE ABOUT THIS THAN I DO.

**THE DEFENDANT:** RIGHT. RIGHT.

**THE COURT:** I KNOW NOTHING.

**THE DEFENDANT:** JUST THAT WE HAD SPOKE ABOUT IT.

**THE COURT:** YOU SPOKE ABOUT WHAT? WHAT DID YOU SPEAK ABOUT?

**THE DEFENDANT:** WELL, ABOUT MEETING PEOPLE AND TAKING THINGS FROM THEM -- I MEAN -- YOU KNOW, TAKING THINGS FROM THEM, BASICALLY. I DON'T KNOW WHAT YOU ACTUALLY WANT TO HEAR, LIKE --

**THE COURT:** I WANT TO KNOW IS -- I WANT TO KNOW WHAT HAPPENED. I WANT YOU TO TELL ME SPECIFICALLY WHAT HAPPENED THAT MAKES YOU THINK YOU'RE GUILTY OF THIS CRIME.

THIS IS CONSPIRACY TO COMMIT ROBBERY, SO WHAT DID YOU DO?

**THE DEFENDANT:** WELL, I KNOWINGLY ACCEPTED SOMETHING, SOLD SOMETHING THAT I KNEW THAT WAS TAKEN FROM A CRIME.

**THE COURT:** OKAY. YOU KNOW, MR. ANDREWS, YOU'RE MAKING THIS MORE COMPLICATED --

**THE DEFENDANT:** BUT I --

**THE COURT:** -- THAN IT NEEDS TO BE, SO PRETEND THAT -- THAT I'M A FAMILY MEMBER OR -- OR A FRIEND AND YOU'RE -- YOU'RE BRAGGING ABOUT WHAT YOU DID. I WANT TO KNOW WHAT YOU DID. IN YOUR OWN WORDS. YOU DON'T NEED TO USE LEGALESE. YOU NEED TO TELL ME WHAT HAPPENED.

**THE DEFENDANT:** OKAY.

-- ABOUT MEETING PEOPLE, PICKING THEM UP --

**THE COURT:** PICKING THEM UP WHERE?

**THE DEFENDANT:** FROM THE AIRPORT AND TAKING THEM SOMEWHERE, YOU KNOW, SPECIFIC PLACES AND TAKING THEM AND HAVING THEM GIVE UP THE STUFF AND --

**THE COURT:** OKAY. WHAT STUFF? AND WHY WOULD YOU BE AT THE AIRPORT?

**THE DEFENDANT:** THAT'S WHERE THEY WOULD LAND. THAT'S WHERE THEY FLOWN INTO.

**THE COURT:** WHO? WHO WOULD LAND? WHO WAS FLYING IN?

**THE DEFENDANT:** OH, DIFFERENT PEOPLE. I'M NOT SURE. I CAN'T REMEMBER THE NAMES.

AND THEN THINGS WILL BE TAKEN FROM THEM AT ANOTHER LOCATION.

**THE COURT:** OKAY. SO -- YOU WERE CALLED OR YOU CALLED THEM?

**THE DEFENDANT:** NO, THEY WERE CALLED --

**THE COURT:** SO TELL ME ABOUT THE SCHEME.

**THE DEFENDANT:** I'M SAYING IT WAS THE OTHER -- THE OTHER PEOPLE -- I WAS CALLED JUST IN TO PICK UP, AND THEN THE -- THE GUY ON THE OTHER END OR -- OR WHAT'S THEY NAME?

**MS. LEONIDA:** YOU CAN SAY NAMES, TOO.

**THE DEFENDANT:** ALL RIGHT. WELL, JERMAINE WAS --

**THE COURT:** SO WHAT DID JERMAINE DO? AND THEN HE CALLED YOU. HE DID SOMETHING AND CALLED YOU.

**THE DEFENDANT:** YEAH. YEAH, HE WOULD TALK TO THE

PEOPLE ON LINE OR HOWEVER HE CONTACT THEM, 'CAUSE I DIDN'T REALLY -- YEAH, CALL THEM OR -- HOWEVER HE REACHED THEM.

**THE COURT:** MR. ANDREWS, YOU'RE ASSUMING THAT I KNOW SOME STUFF HERE.

**THE DEFENDANT:** RIGHT.

**THE COURT:** SO -- SO --

**THE DEFENDANT:** OKAY. HE WOULD GO ONLINE, CONVERSATE (PHONETIC) WITH PEOPLE, MAKE ARRANGEMENTS FOR THEM TO BE AT THE AIRPORT.

**THE COURT:** FOR WHAT? WHY WOULD THEY MAKE ARRANGEMENTS ABOUT WHAT?

**THE DEFENDANT:** BUYING AND SELLING JEWELRY.

**THE COURT:** OKAY.

**THE DEFENDANT:** AND THEN I WOULD PICK THEM UP AND TAKE THEM TO A LOCATION, AND THEN THEY -- THEY WOULD BE ROBBED AT THE SPOT -- AT THE LOCATION OR -- YEAH, WHERE THERE WAS --

**THE COURT:** OKAY. SO YOU WERE -- HOW WERE YOU SUPPOSED TO PICK THEM UP? THAT IS --

**THE DEFENDANT:** EXCUSE ME?

**THE COURT:** HOW DID -- WHY WOULD THEY GET IN A CAR WITH YOU? WHAT WAS THE PLAN?

**THE DEFENDANT:** OH, I WOULD BE THE DRIVER.

**THE COURT:** YOU WERE SUPPOSED TO BE A DRIVER FOR JERMAINE.

**THE DEFENDANT:** NO, A LIMOUSINE SERVICE.

**THE COURT:** SO JERMAINE WANTED YOU TO PRETEND TO BE A LIMOUSINE SERVICE?

**THE DEFENDANT:** YES.

**THE COURT:** HE CALLED YOU UP AND SAID, HEY, I NEED YOU TO BE A LIMO -- A LIMOUSINE SERVICE? IS THAT WHAT HE SAID, ESSENTIALLY? OR WHAT DID HE SAY?

**THE DEFENDANT:** ESSENTIALLY THAT'S -- I DON'T WANT TO TELL YOU SOMETHING THAT I CAN'T REMEMBER VERBATIM.

**THE COURT:** OKAY. SO TELL ME GENERALLY.

**THE DEFENDANT:** YEAH. JUST THAT HE NEEDED ME TO PICK SOMEBODY UP, TAKE THEM OVER HERE AND, YOU KNOW, AND THEN THEY WOULD BE ROBBED AT THE -- WHATEVER PLACE THEY --

**THE COURT:** AND HE TOLD YOU THEY WERE GOING TO BE ROBBED?

**THE DEFENDANT:** YEAH. IN SO MANY WORDS.

**THE COURT:** AND -- WHAT DO YOU MEAN, "IN SO MANY WORDS"?

**THE DEFENDANT:** I'M SAYING LIKE -- HE WOULDN'T SAY THAT, BUT, YEAH, I KNEW WHAT WAS GOING ON.

**THE COURT:** HOW DID YOU KNOW? WHAT DID HE SAY, GENERALLY SPEAKING?

**THE DEFENDANT:** THAT WHEN THEY GET OVER HERE, WE GOING TAKE THE JEWELRY FROM THEM.

**THE COURT:** AND WHAT DID HE EXPECT YOU TO DO?

**THE DEFENDANT:** I DIDN'T -- I DIDN'T HAVE TO DO

ANYTHING. I MEAN, JUST -- I WOULD JUST HAVE THEM THERE, AND THEY'D BE TAKEN OUT OF THE CAR.

**THE COURT:** AND DID THIS EVER HAPPEN?

**THE DEFENDANT:** YEAH.

**THE COURT:** HOW MANY TIMES DID YOU PARTICIPATE?

**THE DEFENDANT:** TWICE.

**THE COURT:** OH, YOU PICKED UP PEOPLE AT THE AIRPORT TWO TIMES?

**THE DEFENDANT:** YES.

**THE COURT:** AND YOU TOOK THEM WHERE?

**THE DEFENDANT:** IN THE -- COCO COUNTY AREA.

**THE COURT:** OKAY. YOU TOOK THEM TO A HOUSE? A SECLUDED AREA?

**THE DEFENDANT:** NO, NO.

**THE COURT:** WHERE'D YOU TAKE THEM?

**THE DEFENDANT:** IT WAS A -- NEAR A -- I DON'T KNOW WHAT KIND OF ESTABLISHMENT. I DON'T KNOW IF IT WAS A -- LIKE, A CENTER OR SOMETHING, AND THEN THERE WAS A FIELD. I DON'T KNOW THE SPECIFIC STREETS. BUT IT WAS JUST RIGHT OFF THE FREEWAY BOTH TIMES.

**THE COURT:** 242 OR 680 OR WHERE?

**THE DEFENDANT:** 880. 880.

**THE COURT:** OFF OF 880.

**THE DEFENDANT:** YES.

**THE COURT:** SO YOU DROVE THEM OFF 880. YOU GOT OFF

THE HIGHWAY, TOOK THEM TO -- WHAT WAS -- A PARKING LOT?

**THE DEFENDANT:** YES. YES.

**THE COURT:** WERE THERE BUILDINGS AROUND?

**THE DEFENDANT:** ONE TIME, YES, LIKE, RESIDENTIAL. AND LIKE I SAID, IT WAS A CENTER OF SOME SORT.

**THE COURT:** LIKE A BUSINESS CENTER?

**THE DEFENDANT:** MORE -- LIKE A SCHOOL-ISH KIND OF THING. I --

**THE COURT:** SO YOU GOT THERE, AND -- WHAT'S HIS NAME AGAIN?

**THE DEFENDANT:** JERMAINE.

**THE COURT:** HE WAS ALREADY THERE?

**THE DEFENDANT:** NO, NO, NO. JERMAINE IS IN JAIL.

**THE COURT:** WHEN YOU TOOK THE PEOPLE TO THE PARKING LOT TO BE -- TO HAVE THEIR JEWELRY TAKEN FROM THEM, WERE YOU MEETING PEOPLE THERE?

**THE DEFENDANT:** OH, YEAH, THEY WERE ALREADY THERE.

**THE COURT:** THEY WERE ALREADY THERE.

SO THEN YOU DRIVE UP IN THE LIMO, AND WHAT HAPPENS?

**THE DEFENDANT:** THEY OPEN THE DOORS AND GRAB THEM OUT.

**THE COURT:** DID THEY HURT THEM?

**THE DEFENDANT:** ONE PARTICULAR TIME, I BELIEVE ONE WAS HURT.

**THE COURT:** HOW DID THEY HURT THEM?

**THE DEFENDANT:** I DON'T KNOW. THEY WERE HITTING HIM, YOU KNOW. TUSSLING WITH HIM AND HITTING HIM.

**THE COURT:** AND WHAT DID YOU DO?

**THE DEFENDANT:** I STAYED IN THE CAR.

**THE COURT:** AND WHEN THEY FINISHED, WHAT HAPPENED?

**THE DEFENDANT:** I DROVE OFF. I MEAN, I DIDN'T, LIKE -- IT WAS (SNAPPING FINGERS), LIKE QUICK. I JUST DROVE OFF.

**THE COURT:** SO THE TWO INDIVIDUALS GOT OUT OF THE CAR AND YOU DIDN'T STAY?

**THE DEFENDANT:** NO.

**THE COURT:** DO YOU KNOW WHAT HAPPENED TO THE TWO INDIVIDUALS?

**THE DEFENDANT:** NO. I MEAN, I KNOW THAT THEY DID NOT STAY AT THAT SCENE, BUT NO.

**THE COURT:** THEY TAKE THEM SOMEWHERE?

**THE DEFENDANT:** NO.

**THE COURT:** DID YOU GO BACK TO THAT -- TO THAT PLACE? DO YOU KNOW WHAT HAPPENED TO THESE PEOPLE?

**THE DEFENDANT:** NO. I KNEW THAT THEY -- I KNEW THAT THEY WEREN'T THERE 'CAUSE I DID GO BACK LATER ON, AND THEY WEREN'T -- THERE WAS NO ONE THERE.

**THE COURT:** WHEN DID THIS HAPPEN?

**THE DEFENDANT:** EARLIER LAST YEAR.

**THE COURT:** DO YOU KNOW APPROXIMATELY WHEN IN 2013?

**THE DEFENDANT:** NO, MA'AM. I DON'T REMEMBER SPECIFICALLY WHEN. I JUST KNOW IT WAS JUST THE LATTER PART OR -- OR THE MIDDLE PART OF LAST YEAR.

**THE COURT:** BEFORE OR AFTER SUMMER?

**THE DEFENDANT:** PROBABLY ABOUT SUMMER. I'M NOT REALLY SURE.

**THE COURT:** MR. ANDREWS, HAS ANYONE THREATENED YOU IN ANY WAY TO FORCE YOU TO CHANGE YOUR PLEA?

**THE DEFENDANT:** NO.

**THE COURT:** ARE YOU PLEADING GUILTY TO PROTECT SOMEONE?

**THE DEFENDANT:** NO.

**THE COURT:** HAS ANYONE PAID OR OFFERED TO PAY YOU IN EXCHANGE FOR A PLEA?

**THE DEFENDANT:** NO.

**THE COURT:** HAS ANYONE PROMISED YOU ANYTHING OR THREATENED YOU IN ANY WAY, SHAPE, OR FORM IN EXCHANGE FOR A PLEA?

**THE DEFENDANT:** NO.

**THE COURT:** I BELIEVE YOU'VE BEEN REPRESENTED -- THIS IS EARLY IN THIS CASE, BUT YOU'VE BEEN REPRESENTED BY MS. LEONIDA THE WHOLE TIME; IS THAT CORRECT?

**THE DEFENDANT:** YES.

**THE COURT:** HAVE YOU BEEN SATISFIED WITH HER REPRESENTATION?

**THE DEFENDANT:** YES.

**THE COURT:** ANY REASON TO COMPLAIN?

**THE DEFENDANT:** NO.

**THE COURT:** COUNSEL, IS THERE ANY REASON WHY HIS PLEA SHOULD NOT NOW BE TAKEN?

**MS. LEONIDA:** NO, YOUR HONOR.

**MS. MARTIN:** YOUR HONOR, MAY I HAVE ONE MOMENT TO CONSULT WITH MS. LEONIDA?

**THE COURT:** YES.

(OFF-THE-RECORD DISCUSSION.)

**MS. LEONIDA:** YOUR HONOR, I'VE -- IN CONSULTATION WITH MS. MARTIN, MR. ANDREWS IS VERY NERVOUS AND HE TRIED TO ANSWER YOUR QUESTIONS AS SPECIFICALLY AS POSSIBLE AND HE DID NOT LIE, BUT THERE ARE OTHER INCIDENTS THAT MS. MARTIN WANTED ON THE RECORD AS PART OF THE FACTUAL BASIS.

MY REQUEST WOULD BE THAT SHE READ HER PREPARED FACTUAL BASIS STATEMENT INTO THE RECORD, AND THEN HE'LL HAVE AN OPPORTUNITY TO AGREE WITH THAT. BUT I THINK IN HIS EFFORT TO ANSWER YOUR SPECIFIC QUESTIONS, HE DIDN'T ANSWER AS BROADLY AS THE GOVERNMENT WANTED HIM TO.

**MS. MARTIN:** I THINK THAT THAT WOULD HELP MAYBE CURE SOME OF THE -- THE ISSUES IN THIS CASE. THERE ARE SOME ADDITIONAL FACTS THAT THE GOVERNMENT THINKS ARE IMPORTANT TO INCLUDE IN THE PLEA, AND AS LONG AS THE DEFENDANT AGREES THAT THOSE ARE ACCURATE --

**THE COURT:** GO AHEAD, MS. MARTIN.

SO, MR. ANDREWS, I'M GOING TO ASK THAT YOU LISTEN VERY CLOSELY TO WHAT MS. MARTIN IS PROFFERING THAT THE GOVERNMENT WOULD BE ABLE TO PROVE IF THIS CASE WENT TO TRIAL BECAUSE I WILL HAVE QUESTIONS FOR YOU AFTERWARDS.

ALL RIGHT?

**THE DEFENDANT:** YES.

**MS. MARTIN:** SO AMONG THE ADDITIONAL FACTS THAT THE GOVERNMENT WOULD BE PREPARED TO PROVE BEYOND A REASONABLE DOUBT ARE THAT BETWEEN -- AT LEAST ON OR BEFORE FEBRUARY 18TH, 2013, THROUGH ON OR ABOUT JANUARY 29TH, 2014, THAT THE DEFENDANT CONSPIRED OR AGREED WITH ONE OR MORE OTHER PEOPLE, SPECIFICALLY JERMAINE NELSON, WHO HE HAS ALREADY MENTIONED, AS WELL AS MICHAEL MARTIN AND CAINE BRAZEAL (PHONETIC) AND OTHERS, TO OBTAIN PROPERTY THAT HE KNEW HE WAS NOT ENTITLED TO RECEIVE BY INDUCING VICTIMS TO PART WITH THE PROPERTY BY THE THREAT OF FORCE OR FEAR.

AMONG OTHER ROBBERIES, THE DEFENDANT HELPED TO PLAN WITH THE COCONSPIRATORS AND PARTICIPATED IN THE FOLLOWING FIVE ROBBERIES OR ATTEMPTED ROBBERIES: FIRST --

**THE COURT:** SO -- I'M GOING TO BE -- BECAUSE IT SOUNDS LIKE THERE IS A LOT THERE, WE'RE GOING TO GO TAKE THIS ONE AT A TIME.

YOU'VE HEARD WHAT SHE SAID SO FAR; IS THAT ACCURATE?

**THE DEFENDANT:** CAN I SPEAK WITH MY ATTORNEY JUST FOR

A SECOND?

**THE COURT:** YOU MAY.

(OFF-THE-RECORD DISCUSSION.)

**THE COURT:** LET'S JUST STAND IN RECESS HERE FOR TWO MINUTES.

(RECESS TAKEN AT 11:44 A.M.; PROCEEDINGS RESUMED AT 12:20 P.M.)

**THE COURT:** CAN YOU ANSWER MY QUESTION NOW?

WE'RE BACK ON THE RECORD. THE RECORD WILL REFLECT THAT ALL PARTIES ARE PRESENT.

**THE DEFENDANT:** YES.

**THE COURT:** IS WHAT -- SO EVERY -- SO WHAT SHE JUST SAID THUS FAR, ALL OF THAT'S ACCURATE?

**THE DEFENDANT:** YES.

**THE COURT:** MS. MARTIN.

**MS. MARTIN:** OKAY. AMONG THE ROBBERIES THAT DEFENDANT WAS INVOLVED IN SPECIFICALLY ON FEBRUARY 18TH, 2013, THE DEFENDANT CONSPIRED TO COMMIT AND PARTICIPATED IN A ROBBERY IN MANTECA, CALIFORNIA AS PART OF THE CONSPIRACY. THE DEFENDANT AGREED WITH OTHERS, PLANNED AND PARTICIPATED IN THE ROBBERY OF THE NEW YORK DIAMONDS JEWELRY STORE IN MANTECA, CALIFORNIA.

**THE COURT:** IS THAT CORRECT?

(OFF-THE-RECORD DISCUSSION.)

**MS. LEONIDA:** CAN WE HAVE A MINUTE, YOUR HONOR?

(OFF-THE-RECORD DISCUSSION.)

**THE COURT:** MS. LEONIDA, WE CAN TAKE A BREAK IF YOU NEED TO TALK TO YOUR CLIENT AND WE CAN FINISH THIS UP THIS AFTERNOON.

**MS. LEONIDA:** I THINK WE'RE READY, YOUR HONOR.

MR. ANDREWS HAD SOME QUESTIONS ABOUT WHETHER THESE WERE LEADING TO SUPERSEDING INDICTMENTS AND -- AND SO THAT WAS WHAT I WAS TALKING TO HIM ABOUT, AND I THINK WE'VE ADDRESSED THAT NOW.

**MS. MARTIN:** AND I THINK PART OF THE ISSUE HERE, YOUR HONOR, IS THAT IF THE DEFENDANT PLEADS TO CERTAIN THINGS AND NOT OTHER THINGS, THEN THERE COULD BE OTHER INDICTMENTS AND SEPARATE CHARGES AGAINST THE DEFENDANT, SO THAT'S PART OF THE ISSUE HERE.

**THE COURT:** ALL RIGHT.

**MS. LEONIDA:** I THINK WE'RE READY.

**THE COURT:** SO WERE YOU INVOLVED IN THE MANTECA CONSPIRACY TO ROB THE NEW YORK DIAMOND JEWELRY STORE?

**THE DEFENDANT:** YES.

**THE COURT:** WELL, WHAT WAS YOUR ROLE?

**THE DEFENDANT:** IT'S -- I JUST -- WE TALKED ABOUT IT.

**THE COURT:** YOU TALKED WITH THE INDIVIDUALS THAT SHE MENTIONED EARLIER?

**THE DEFENDANT:** YEAH, WELL, I -- I WAS THERE AT THE -- IN THE -- IN THE VICINITY, AT THE WAL-MART. NEXT TO

IT, IT'S A BIG PLAZA. AND THEN AFTERWARDS, THE -- YOU KNOW, I -- I WILLINGLY ACCEPTED THE JEWELRY THAT CAME FROM THERE AND SOLD THEM SOMEWHERE.

**THE COURT:** MS. MARTIN.

**MS. MARTIN:** THAT'S WHAT THE GOVERNMENT WOULD PROVE, THAT THE DEFENDANT CONSPIRED WITH OTHER PEOPLE TO ROB THE STORE AND THEN TOOK THE ITEMS STOLEN FROM THE MANTECA JEWELRY STORE AND SOLD THEM TO A THIRD PARTY.

MR. ANDREWS WAS ALSO INVOLVED IN -- AS PART OF THE CONSPIRACY IN A ROBBERY ON JUNE 10TH, 2013, IN OAKLAND. DURING THAT EVENT, MR. ANDREWS AGREED WITH OTHERS, PLANNED AND PARTICIPATED IN THE ROBBERY OF AN INDIVIDUAL VICTIM FROM OUT OF STATE WHO ADVERTISED A ROLEX WATCH FOR SALE ON CRAIGSLIST.

HE PARTICIPATED IN THE SCHEME WHICH INVOLVED INDUCING THE VICTIM TO FLY INTO OAKLAND TO SELL THE WATCH. COCONSPIRATORS MET THE VICTIM AT A WELLS FARGO BANK IN OAKLAND. THE VICTIM HANDED THE WATCH TO THE PURPORTED BUYER, ONE OF THE COCONSPIRATORS, AND THAT PERSON RAN OUT OF THE BANK WITH THE WATCH.

WHEN WITNESSES TRIED TO TACKLE THE PERSON THAT HAD JUST RUN OFF WITH THE WATCH, OTHER MEMBERS OF THE CONSPIRACY USED THEIR FISTS TO ATTACK THAT WITNESS AND ALLOW THE PERSON WITH THE WATCH TO GET AWAY.

**THE COURT:** IS THAT ACCURATE, MR. ANDREWS?

**THE DEFENDANT:** YES.

**THE COURT:** AND WHAT WAS YOUR ROLE IN THAT PARTICULAR EVENT?

**THE DEFENDANT:** I -- I GRABBED THE GUY THAT WAS GRABBING THE GUY THAT HAD RAN OUT OF THE BANK.

**THE COURT:** OKAY. MS. MARTIN.

**MS. MARTIN:** ON JULY 3RD, 2013, MR. ANDREWS DURING THE CONSPIRACY PARTICIPATED IN A ROBBERY IN EL CERRITO. THIS WAS ONE OF THE ONES THAT MR. ANDREWS REFERENCED EARLIER, I BELIEVE.

MR. ANDREWS AGREED WITH OTHERS, PLANNED AND PARTICIPATED IN THE ROBBERY OF AN INDIVIDUAL VICTIM FROM SOUTHERN CALIFORNIA WHO ADVERTISED DIAMONDS FOR SALE ON CRAIGSLIST.

ON JULY 3RD, 2013, IN EL CERRITO, MR. ANDREWS PARTICIPATED IN THE SCHEME WHICH INVOLVED INDUCING THE VICTIM TO FLY INTO OAKLAND TO SELL DIAMONDS. A COCONSPIRATOR PICKED THE DEFENDANT UP -- ONE OF THE COCONSPIRATORS PICKED THE DEFENDANT -- OR EXCUSE ME -- PICKED THE VICTIM UP IN A LIMOUSINE FROM THE AIRPORT AND DROVE THE VICTIM FROM THE AIRPORT TO EL CERRITO, CALIFORNIA FOR THE PURPOSE OF ROBBING THE VICTIM.

DURING THE ROBBERY, THIS VICTIM WAS INJURED WHEN THE CONSPIRATORS USED A FIREARM AND HIT THE VICTIM ON THE HEAD WITH THE FIREARM AND STOLE TWO DIAMONDS FROM THE VICTIM.

**THE COURT:** IS THAT ACCURATE, MR. ANDREWS?

**THE DEFENDANT:** YES.

**THE COURT:** NEXT.

**MS. MARTIN:** IN THE COURSE OF THE CONSPIRACY, THERE WAS ANOTHER ROBBERY THAT MR. ANDREWS WAS INVOLVED IN ON JULY 11TH, 2013, ALSO REFERENCED BY MR. ANDREWS EARLIER.

MR. ANDREWS AGREED WITH OTHERS, PLANNED AND PARTICIPATED IN THE ROBBERY OF AN INDIVIDUAL VICTIM FROM OUT OF STATE WHO ADVERTISED A DIAMOND FOR SALE ON CRAIGSLIST.

ON JULY 11TH, 2013, IN CONTRA COSTA COUNTY, MR. ANDREWS PARTICIPATED IN THE SCHEME IN WHICH THE CONSPIRATORS INDUCED THE VICTIM TO FLY TO OAKLAND TO SELL THE DIAMOND. THE VICTIM WAS PICKED UP BY COCONSPIRATORS AT THE AIRPORT AND DROVE TO A PREDETERMINED ROBBERY LOCATION WHERE THE CONSPIRATORS PULLED THE VICTIM OUT OF THE LIMOUSINE AND USED A SILVER HANDGUN TO ROB THE VICTIM OF THE DIAMOND SHE HAD POSTED FOR SALE ON CRAIGSLIST.

**THE COURT:** IS THAT ACCURATE AS WELL?

**THE DEFENDANT:** YES.

**THE COURT:** ON BOTH THE JULY EVENT (SIC), DID YOU DRIVE THE CAR? DID YOU DRIVE THE LIMO?

**THE DEFENDANT:** ON WHICH ONE?

**THE COURT:** THE ONE -- THE GENTLEMEN FROM L.A.? DID YOU DRIVE THE LIMO THERE?

**THE DEFENDANT:** I'M NOT SURE ABOUT THE L.A. -- YOU KNOW, WHERE THEY WERE COMING FROM, BUT I REMEMBER DRIVING

TWICE.

**THE COURT:** ALL RIGHT. AND THE NEXT ONE?

**MS. MARTIN:** THE LAST ONE, YOUR HONOR, ON DECEMBER 16TH, 2013 -- AND THIS INVOLVED MR. ANDREWS PLANNING AND AGREEING WITH OTHERS TO PARTICIPATE IN THE ROBBERY OF AN INDIVIDUAL FROM OUT OF STATE WHO WAS SELLING A -- A WATCH ON CRAIGSLIST. AND IN THIS CASE, THE COCONSPIRATORS RENTED A CAR FROM AVIS RENTAL CAR AND HAD ANOTHER INDIVIDUAL POSE AS AN AIRPORT LIMO DRIVER TO PICK UP THE INDIVIDUAL COMING TO SELL THE ITEM.

THE DRIVER WENT TO THE AIRPORT TO ATTEMPT TO PICK UP THE PERSON WHO THEY THOUGHT WAS THE SELLER. THIS WAS A DISRUPTION BY LAW ENFORCEMENT AND ACTUALLY WAS AN UNDERCOVER LAW ENFORCEMENT OFFICER. SO AT THAT POINT, THE ROBBERY ENDED, BUT THE DEFENDANT DID AGREE TO ROB THIS PERSON AND THOUGHT THAT THIS WAS A PERSON COMING THAT THEY WERE GOING TO ROB, AND HE DID TAKE SUBSTANTIAL STEPS TOWARD COMPLETING THAT ROBBERY.

**THE COURT:** IS THAT ACCURATE, MR. ANDREWS?

**THE DEFENDANT:** YES.

**THE COURT:** AND WHAT WAS YOUR ROLE IN THIS LAST EVENT?

**THE DEFENDANT:** JUST -- I JUST KNEW ABOUT IT AND MADE STEPS LIKE I -- YOU KNOW, I -- I REMEMBER HIM ASKING ME TO DO SOMETHING ONLINE, LIKE TYPE A MESSAGE OR SOMETHING.

**MS. MARTIN:** IN THIS PARTICULAR EVENT, DECEMBER 16TH,

2013, MR. ANDREWS WAS ACTUALLY ON THE TELEPHONE WITH THE LIMO DRIVER AT THE TIME THAT THE AGENTS DISRUPTED THE CONSPIRACY.

**THE COURT:** DO YOU REMEMBER THAT, MR. ANDREWS?

**THE DEFENDANT:** YEAH, I -- I JUST DIDN'T REMEMBER THAT. IT -- IT COULD HAVE BEEN -- VERY WELL TRUE. I JUST -- SPECIFICS RIGHT NOW, IT --

**THE COURT:** OKAY. ANYTHING ELSE, MS. MARTIN?

**MS. MARTIN:** FINALLY, THE GOVERNMENT WOULD BE ABLE TO PROVE THAT THE UNLAWFUL TAKING OF THE PROPERTY OR ATTEMPT TO TAKE THE PROPERTY INVOLVED IN THE CONSPIRACY ACTUALLY OR POTENTIALLY AFFECTED COMMERCE BETWEEN ONE STATE AND ANOTHER IN SOME WAY.

**THE COURT:** WOULD YOU AGREE WITH THAT, MR. ANDREWS?

**THE DEFENDANT:** YES.

**THE COURT:** ANYTHING ELSE?

**MS. MARTIN:** NO, THANK YOU, YOUR HONOR.

**THE COURT:** OKAY. IS THERE ANY REASON WHY HIS PLEA SHOULD NOT NOW BE TAKEN?

**MS. LEONIDA:** NO, YOUR HONOR.

**MS. MARTIN:** NO, YOUR HONOR.

**THE COURT:** FORMAL READING OF THE INDICTMENT WAIVED?

**MS. LEONIDA:** YES, YOUR HONOR.

**THE COURT:** AND, MR. ANDREWS, WHAT IS YOUR PLEA TO THE SOLE COUNT OF THE INDICTMENT, VIOLATION OF TITLE 18 OF THE UNITED STATES CODE AT SECTION 951 SUBSECTION A, CONSPIRACY TO

COMMIT ROBBERY AFFECTING INTERSTATE COMMERCE RELATING TO THOSE ACTS THAT HAVE BEEN DESCRIBED HERE IN COURT AND OCCURRED ON OR BEFORE FEBRUARY 18TH, 2013, CONTINUING THROUGH AT LEAST JANUARY 29TH, 2014, THAT YOU DID KNOWINGLY, WILLINGLY, CONSPIRE TO COMMIT ROBBERY ON CERTAIN INDIVIDUALS WITH RESPECT TO ARTICLES AFFECTING INTERSTATE COMMERCE, GUILTY OR NOT GUILTY?

**THE DEFENDANT:** GUILTY.

**THE COURT:** THE COURT FINDS THAT THE DEFENDANT IS FULLY COMPETENT AND CAPABLE OF ENTERING INTO AN INFORMED PLEA; THAT IS -- HE IS AWARE OF THE NATURE OF THE CHARGES AND THE CONSEQUENCES OF THAT PLEA; THAT HE KNOWINGLY, VOLUNTARILY, INTELLIGENTLY, AND WITH THE ADVICE OF COUNSEL ENTERS A GUILTY PLEA.

COURT FURTHER FINDS THAT THERE IS SUFFICIENT INDEPENDENT FACTUAL BASIS TO SUPPORT THE CONVICTION. THE COURT THEREFORE ACCEPTS THE PLEA AND FINDS YOU GUILTY OF THAT ONE COUNT.

AT THIS TIME, MR. ANDREWS, I AM GOING TO REFER YOU TO PROBATION FOR A PRESENTENCE REPORT. THE WAY THE PROCESS WORKS, THEY WILL MEET WITH YOU TO GAIN INFORMATION FROM YOU THAT WILL ASSIST --

YOU KNOW WHAT? I DID FORGET SOMETHING.

MR. ANDREWS, DO YOU UNDERSTAND THAT THE COURT IS -- IT IS THE COURT'S DUTY AND OBLIGATION TO DETERMINE A SENTENCE IN EVERY CRIMINAL CASE?

**THE DEFENDANT:** YES.

**THE COURT:** AND THAT IN ORDER TO DETERMINE WHAT A -- AN APPROPRIATE SENTENCE IS, THE COURT HAS AN OBLIGATION TO DO A COUPLE OF THINGS.

FIRST, THE COURT WILL CALCULATE THE APPLICABLE SENTENCING GUIDELINES CALCULATION BASED UPON A REVIEW OF THE SENTENCING COMMISSION GUIDELINES RELATIVE TO THIS PARTICULAR CRIME AND IMPACTED BY YOUR CRIMINAL HISTORY CATEGORY.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** HAVE YOU REVIEWED THE CHART -- THIS CHART, THIS SENTENCING TABLE (INDICATING) WITH YOUR ATTORNEY?

**THE DEFENDANT:** YES.

**THE COURT:** AS YOU CAN TELL, THERE IS AN OFFENSE LEVEL HERE ON THE SIDE. THE COURT WILL DETERMINE WHAT THE OFFENSE LEVEL IS FOR THIS CRIME AND THEN WILL HAVE THE PRESENTENCE REPORT TO HELP DETERMINE WHAT YOUR APPROPRIATE CRIMINAL HISTORY CATEGORY IS.

DO YOU UNDERSTAND THAT?

**THE DEFENDANT:** YES.

**THE COURT:** I'LL USE THIS TABLE, THEN, TO FIGURE OUT WHAT THE APPROPRIATE RANGE IS IN TERMS OF AN APPROPRIATE SENTENCE, BUT THAT'S JUST A STARTING POINT. ONCE I MAKE THAT DETERMINATION, I WILL THEN -- OR THE COURT WILL THEN LOOK AT THE SENTENCING FACTORS UNDER TITLE 18 OF THE UNITED STATES

CODE AT SECTION 3553 TO CONSIDER OTHER ISSUES THAT WOULD BE IMPORTANT FOR PURPOSES OF DETERMINING WHAT A SENTENCE IS.

HAVE YOU GONE THROUGH THOSE FACTORS WITH YOUR ATTORNEY?

**THE DEFENDANT:** YES.

**THE COURT:** OKAY. THOSE FACTORS INCLUDE THINGS LIKE THE HISTORY AND CIRCUMSTANCES OF THE DEFENDANT, THE SERIOUSNESS OF THE OFFENSE, THE GOAL OF PROTECTING THE PUBLIC, RESPECT FOR LAW, WHAT A JUST PUNISHMENT IS.

DO YOU UNDERSTAND THAT PROCESS?

**THE DEFENDANT:** YES.

**THE COURT:** OKAY.

I DIDN'T EXPLAIN THAT TO YOU BEFORE I TOOK YOUR PLEA. DO YOU WANT TO CHANGE YOUR PLEA AT THIS TIME?

**THE DEFENDANT:** NO.

**THE COURT:** COUNSEL WAIVE ANY IRREGULARITIES?

**MS. LEONIDA:** YES, YOUR HONOR.

**MS. MARTIN:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT. MR. ANDREWS, THEN A PRESENTENCE REPORT WILL BE PREPARED IN ORDER TO -- TO ASSIST ME WITH THE SENTENCING DECISION THAT I HAVE TO MAKE. DURING YOUR MEETING WITH PROBATION, YOU ARE ENTITLED TO HAVE YOUR LAWYER WITH YOU.

A REPORT WILL BE PREPARED. BOTH PARTIES WILL HAVE AN OPPORTUNITY TO REVIEW IT, MAKE ANY OBJECTIONS, AND RESOLVE -- AND ATTEMPT TO RESOLVE THOSE OBJECTIONS WITH PROBATION.

ONCE THAT PROCESS HAPPENS, A COPY OF THE REPORT WILL BE FORWARDED TO ME. AND THEN BEFORE THE DATE ON YOUR SENTENCING, I EXPECT I WILL RECEIVE MEMORANDUMS (SIC) FROM BOTH SIDES INDICATING WHAT THEY BELIEVE AN APPROPRIATE SENTENCE IS.

AT THE TIME OF YOUR SENTENCING, YOU HAVE A RIGHT TO ADDRESS THE COURT.

DO YOU UNDERSTAND THE PROCESS?

**THE DEFENDANT:** YES.

**THE COURT:** OKAY.

DATE FOR DISPOSITION.

**THE CLERK:** JUNE 5TH AT 2:00 P.M.

**THE COURT:** DOES THAT WORK, COUNSEL?

**MS. MARTIN:** YES, YOUR HONOR.

**MS. LEONIDA:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT. WE WILL SEE YOU JUNE 5TH AT 2:00 P.M.

**MS. MARTIN:** THANK YOU, YOUR HONOR.

**THE COURT:** THANK YOU.

(PROCEEDINGS WERE CONCLUDED AT 12:34 P.M.)

--OOO--

**CERTIFICATE OF REPORTER**

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER. I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

Raynee H. Mercado

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

FRIDAY, MAY 1, 2015