JULIA M. JAYNE (State Bar No. 202753)
Email: *julia@jaynelawgroup.com*
ASHLEY RISER (State Bar No. 320538)
JAYNE LAW GROUP, P.C.
483 9th Street, Suite 200
Oakland, Ca 94607
Telephone: (415) 623-3600
Facsimile: (415) 623-3605

Attorneys for Defendant
CLARENCE ANDREWS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-14-094 YGR |
| Plaintiff, | MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A) (COMPASSIONATE RELEASE) |
| v. | |
| CLARENCE ANDREWS, | |
| Defendant. | |

CLARENCE ANDREWS moves for an order modifying his sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). Mr. Andrews requests that the Court reduce his sentence to time served with the remaining balance of his original sentence imposed as a period of supervised release with home confinement and other conditions the Court deems just.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

# **TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................................1

**BACKGROUND** ..................................................................................................................................1

**ARGUMENT** .......................................................................................................................................3

**I.   Mr. Andrews is eligible for compassionate release.** ...............................................................3

    **A.   Lompoc waited three months to notify Mr. Andrews of their denial.** .........................3

    **B.   Mr. Andrews' heightened risks are extraordinary and compelling reasons.** ...............................................................................................................................4

        **1.   Chronic kidney disease, hypertension, and prediabetes** ......................................4

        **2.   Testicular lump** ........................................................................................................5

        **3.   USP Lompoc's inability to protect inmates from the coronavirus** ....................6

**II.   18 U.S.C. §3553(a)'s sentencing factors and the United States Sentencing Commission's policy statements favor sentence reduction under Section 3582.** .....................6

    **A.   Close monitoring with restrictive conditions, extensive programming, and the threat of returning to custody alleviate danger to the community concerns.** ..................................................................................................................................7

        **1.   Home confinement and close monitoring** .............................................................7

        **2.   Extensive educational, vocational, and behavior programming** .......................7

            **(i)   Education** ........................................................................................................8

            **(ii)   Programming** ................................................................................................8

        **3.   Heightened risk of return to custody** .....................................................................9

        **4.   Mr. Andrews has an excellent release plan** .........................................................9

    **B.   Section 3553(a)'s sentencing factors support sentence reduction** ..............................10

        **1.   The "most up-to-date picture" includes Mr. Andrews' impressive post-sentencing rehabilitation and the ongoing coronavirus pandemic** ..................................................................................................................10

        **2.   Section 3553(a)(1) includes family and community ties and employment** ....................................................................................................................11

        **3.   Mr. Andrews' imprisonment cannot provide him with needed educational and vocational training or medical care** ..........................................12

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

| | | | |
|---|---|---|---|
| | **4.** | **Sentencing Mr. Andrews to home confinement with strict restrictions and a period of supervised release satisfies 3553(a)(2)(A)'s requirements** .................................................................. 12 | |
| | | (i)   Mr. Andrews' sentence is more punitive than intended ....................... 12 | |
| | | (ii)  Mr. Andrews' time spent in custody, along with a period of home confinement and supervised release, will reflect the serious nature of the offense and provide just punishment ................. 12 | |
| | **5.** | **Mr. Andrews is deeply remorseful** ................................................................... 14 | |
| **C.** | | **United States Sentencing Guidelines policy statements.** ............................................... 14 | |

**REQUEST FOR IMMEDIATE RELEASE** ........................................................................................... 15

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

# TABLE OF AUTHORITIES

## CASES

*Pepper v. United States*, 562 U.S. 476 (2011) .......... 10

*United States v. Barber*, 2020 U.S. Dist. LEXIS 83457 (D. Or. May 12, 2020) .......... 13

*United States v. Castillo*, 2020 WL 2820401 (S.D. Tex. May 29, 2020) .......... 13

*United States v. Crowe*, 2020 WL 7185648 (E.D. Mich. Dec. 7, 2020) .......... 8

*United States v. Decator*, 452 F. Supp. 3d 320 (D. Md.) .......... 10

*United States v. El-Hanafi*, 10-CR-162 (KMW) (S.D.N.Y. May. 19, 2020) .......... 12

*United States v. Fernandez*, 2020 WL 5909490 (E.D. Cal. Oct. 6, 2020) .......... 6

*United States v. Galaz*, 2020 WL 4569125 (S.D. Cal. Aug. 6, 2020) .......... 13

*United States v. Heyward*, 2020 WL 3547018 (D. Md. June 30, 2020) .......... 7

*United States v. Hilow*, 2020 WL 2851086 (D.N.H. June 2, 2020) .......... 5

*United States v. Indarte*, 2020 WL 6060299 (W.D. Wash. Oct. 14, 2020) .......... 12

*United States v. Johnson*, 2020 WL 4501513 (D.S.C. Aug. 5, 2020) .......... 4

*United States v. Ludwig*, No. 2020 WL 4547347 (E.D. Cal. Aug. 6, 2020) .......... 6

*United States v. Medlin,* 2020 WL 4274199, (M.D. Tenn. July 24, 2020) .......... 9

*United States v. Parker*, Case No. 2:98-cr-00749-CAS .......... 11

*United States v. Readus*, 2020 WL 2572280 (E.D. Mich. May 21, 2020) .......... 5

*United States v. Rodriguez*, 2020 WL 4592833 (S.D. Cal. Aug. 5, 2020) .......... 7

*United States v. Russo*, 454 F. Supp. 3d 270 (S.D.N.Y. 2020) .......... 3

*United States v. Terraciano*, 2020 WL 5878284 (E.D. Cal. Oct. 2, 2020) .......... 13

*United States v. Valencia*, 15 Cr. 163 (AT), 9 (S.D.N.Y. May. 11, 2020) .......... 4

*United States v. Williams*, 2020 WL 3640016 (N.D. Cal. July 6, 2020). .......... 2, 14

*United States v. Wilson*, 2020 WL 5894193 (N.D. Iowa Oct. 5, 2020) .......... 8

## STATUTES

18 U.S.C. § 1951 .......... 1

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

| | | |
|---|---|---:|
| 1 | 18 U.S.C. § 3553(a) | 2, 6, 10, 13 |
| 2 | 18 U.S.C. § 3553(a)(1) | 11 |
| 3 | 18 U.S.C. § 3553(a)(2)(A) | 12 |
| 4 | 18 U.S.C. § 3582(c)(1)(A) | 2 |
| 5 | 18 U.S.C. §3553(a)(2)(D) | 11, 12 |

**U.S. SENTENCING COMMISSION GUIDELINES**

| | | |
|---|---|---:|
| 7 | U.S.S.G. § 1B1.13 | 14 |

**OTHER AUTHORITIES**

| | | |
|---|---|---:|
| 9 | Centers for Disease Control and Prevention, *People with Certain Medical Conditions* | 4 |
| 11 | *COVID-19 Cases*, Federal Bureau of Prisons | 3, 10 |
| 12 | *COVID-19 risks: Irregular heartbeat may increase risk, blood pressure medicines do not*, American Heart Association | 5 |
| 13 | *Detecting Testicular Cancer Early is Critical*, Southeastern Med. | 6 |
| 14 | *Find an Inmate*, Bureau of Prisons | 2 |
| 15 | *Inmates Embrace Threshold*, Bureau of Prisons | 9 |
| 16 | Jordyn Imhoff, *Does High Blood Sugar Worsen COVID-19 Outcomes?*, MHealth Lab | 5 |
| 17 | *Modified Operations*, Bureau of Prisons | 12 |
| 19 | Robert Webster Jr., *LiveSmart: Type 2 Diabetes Poses Increased Risk for Complications from COVID-19*, St. Peter's Health Partners | 5 |

# INTRODUCTION

Domestic violence, guns, and sexual abuse plagued Clarence Andrews' childhood.[1] While seeing his mother shoot his father after years of abuse or being repeatedly molested by a family member[2] do not excuse or justify his behavior, they help understand what may have triggered this intelligent and sensitive man to begin down a path of crime. Fortunately, after several years in prison, Mr. Andrews realizes this. More importantly, he understands that suppressing childhood trauma by acting like someone else will not change the past, nor will it change his future for the better. Instead – because of extensive programming, education, and self-reflection – Mr. Andrews understands that he owes a duty to his son, his community, and himself to be a law-abiding member of society, and doing so *will* change his future in a profound and positive way.

Despite this hard-fought transformation, Mr. Andrews and his family know that many difficulties await him. Even so, Mr. Andrews and his family are ready: his sister has a place for him to live and he has multiple job opportunities. They have also banded together to get him treatment for chronic health issues, including chronic kidney disease and a potentially cancerous lump. Such treatment is particularly crucial at this time: as the COVID pandemic surges in our prisons, people like Mr. Andrews are ignored, at best, or die, at worst. Thus, Mr. Andrews' motion for compassionate release stems from the real possibility that his prison sentence will transform into a death sentence.

# BACKGROUND

*Procedural*

A single count Indictment, filed on February 20, 2014, charged Mr. Andrews with a violation of 18 U.S.C. § 1951(a), Conspiracy to Commit Robbery Affecting Interstate Commerce. The Indictment and subsequent conviction arose from a series of robberies involving Mr. Andrews.[3] According to the

---

[1] Dkt. 39, Presentence Report.
[2] *Id*.
[3] *Id*.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

1

Presence Report, Mr. Andrews and his co-conspirators planned and participated in four armed robberies, and a robbery that did not occur.

Less than a month after his Indictment, Mr. Andrews entered a guilty plea,[4] and was subsequently sentenced to 210 months in prison.[5] This sentence included adjustments for certain specific offense characteristics, including use of a firearm, physically restraining a victim, and causing bodily injury.[6] At sentencing, the Court recommended Mr. Andrews placement in the Residential Drug Abuse Treatment Program, or RDAP. The Bureau of Prisons did not follow the Court's recommendation.[7]

Mr. Andrews has now served about 84 months of his sentence, and his anticipated release date is January 23, 2029.[8] The amount of time includes both anticipated good time and presentencing custody credit.

*Statutory*

Section 3582(c)(1)(A), as modified by the First Step Act, allows defendant to move for modification of a prison term after (1) fully exhausting their administrative rights to appeal a failure of the BOP to bring a motion for sentence reduction, or (2) "the lapse of 30 days from the receipt of such a request... whichever is earlier." In turn, courts

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors ... in section 3553(a) to the extent ... they are applicable, if ... extraordinary and compelling reasons warrant such a reduction.

Section 3582 also directs courts to consider § 3553(a)'s sentencing factors, consistent with any applicable policy statements of the United States Sentencing Commission.[9] Courts also must determine whether the defendant is a danger to the community.[10]

---

[4] *Id.*
[5] Dkt. 42, Judgement.
[6] Dkt. 39.
[7] *See* Declaration of Ashley Riser ("Riser Decl"), Ex. K, *Request for §3621(e) Offense Review*.
[8] *Find an Inmate*, Bureau of Prisons (last accessed Jan. 12, 2021), https://www.bop.gov/inmateloc/.
[9] *See, e.g.*, *United States v. Williams*, 2020 WL 3640016, *1 (N.D. Cal. July 6, 2020).
[10] There is a minority view that § 3582(c)(1)(A)(i)'s plain language does not require such a determination. But in recognizing the majority position, defense counsel will address danger.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

2

*Medical*

Mr. Andrews has chronic kidney disease,[11] a history of hypertension,[12] and prediabetes.[13]

He also submitted a request to medical staff in July 2020 to address pain and a lump in his testes.[14] Since then, both Mr. Andrews and defense counsel have requested medical treatment on several days for evaluation of the lump, which has grown in size. Lompoc has not responded.

*Lompoc*

As of January 11, 2021, 50 inmates and 7 staff members at USP Lompoc have tested positive for COVID-19. Further, 2 inmates have died from COVID.[15]

## ARGUMENT

**I.   Mr. Andrews is eligible for compassionate release.**

   **A.   Lompoc waited three months before notifying Mr. Andrews of their denial.**

Mr. Andrews sent a request to USP Lompoc for compassionate release on June 25, 2020. He received their denial – dated July 24, 2020 – on October 16, 2020. Thus, Mr. Andrews could not appeal the denial within FCC Lompoc's 20-day appeal window.[16]

There is scarce caselaw with this set of facts, but "the plain language of Section 3582(c) evinces congressional intent" to give inmates "a right to a prompt and meaningful judicial determination of whether []he should be compassionately released, regardless of whether administrative remedies have been exhausted."[17] Thus, courts "should exercise their equitable authority when" someone "diligently" pursues these rights, but "the BOP has not... satisf[ied] its obligation to act expeditiously (including through appeals)... and an extraordinary circumstance, not of the movant's own making, stands as a

---

[11] *See* Riser Decl., Ex. L, *Clarence Andrews' Complete Medical Files* ("Medical"), e.g., 262, 287, 305 .
[12] *Id*. at 259. However, defense counsel advises the Court that other medical records state that Mr. Andrews does not have a history of hypertension. *See e.g.*, 144 and157.
[13] *Id*. at 287.
[14] *See* Riser Decl., Ex. D, *Clarence Andrews' July 23, 2020 Request for Medical Evaluation* ("July Request").
[15] *COVID-19 Cases*, Federal Bureau of Prisons (Jan. 11, 2021), https://www.bop.gov/coronavirus/.
[16] Inmates can appeal the Bureau's denial "within 20 calendar days of the date of th[e] response." *See* Riser Decl., Ex. B, *Compassionate Release Request and Response Memorandum for Andrews' Clarence, Reg. No. 19469-111* ("Lompoc Memo").
[17] *United States v. Russo*, 454 F. Supp. 3d 270, 277 (S.D.N.Y. 2020).

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

3

substantial obstacle to... obtaining" review.[18] Here, Lompoc did not act expeditiously. For that reason, Lompoc's three-month delay should not block the prompt and meaningful judicial review envisioned by Congress.[19]

### B. Mr. Andrews' heightened risks are extraordinary and compelling reasons.

Mr. Andrews' medical conditions, including a potentially cancerous growth, and Lompoc's failure to contain the virus are extraordinary and compelling reasons justifying sentence reduction.

#### 1. Chronic kidney disease, hypertension, and prediabetes

Mr. Andrews is uniquely vulnerable to illness or death from the coronavirus because of his medical conditions. In fact, the Department of Justice has adopted the position that extraordinary and compelling reasons exist when an inmate has a condition, identified by the Centers for Disease and Control Prevention, as putting them at risk for serious injury or death.[20] Chronic kidney disease is one such condition.[21]

*Kidney Disease*

"Having chronic kidney disease *of any stage* increases your risk for severe illness from COVID-19."[22] This means that "at least with respect to chronic kidney disease... an inmate is... suffering from a serious... medical condition... that substantially diminishes the[ir] ability... to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[23]

*Hypertension*

"Having other cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure)... might increase your risk of severe illness from COVID-19."[24] In turn, courts, "[c]onsistent

---

[18] *United States v. Valencia*, 15 Cr. 163 (AT), 9 (S.D.N.Y. May. 11, 2020).
[19] *Id*.
[20] *See e.g.*, *United States v. Johnson*, 2020 WL 4501513, *5 (D.S.C. Aug. 5, 2020) ("the Court is advised that the Department of Justice has taken the position that an inmate having one of the medical conditions identified by the CDC as placing an individual at increased risk for serious injury or death from COVID-19 constitutes an extraordinary and compelling reason...").
[21] Centers for Disease Control and Prevention, *People with Certain Medical Conditions* (last accessed Jan. 11, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Certain Medical Conditions").
[22] *Id*.
[23] *Johnson* at *5 (internal citations and quotations omitted).
[24] *Certain Medical Conditions*.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

with an emerging medical consensus... have recognized that hypertension is a risk factor for COVID-19."[25] For example, in *United States v. Hilow*, the court granted defendant's motion for release after finding that "even controlled hypertension in conjunction with COVID-19 is a health risk."[26]

*Prediabetes*

Prediabetics "are at high risk for making the [corona]virus-induced respiratory dysfunction much worse, potentially resulting in death."[27] Further, "[p]rediabetes increases the risk for having a stroke and developing Type 2 diabetes and heart disease, all of which pose an increased risk of complications for individuals who find themselves battling COVID-19."[28]

*Arrhythmia*

Mr. Andrews' cardiac arrhythmia, which he describes as a "flutter,"[29] may put him at a "significantly higher risk of death or ICU mortality, independent of other health issues related to the heart, kidneys and lungs."[30]

### 2. Testicular lump

Mr. Andrews and defense counsel have sent multiple requests for evaluation of Mr. Andres' testicular lump:

- July 23, 2020: Mr. Andrews submitted form BP-S148.055, INMATE REQUEST TO STAFF for pain in testicles and chest[31]

- September 23, 2020: Follow-up email about heart and lump in testes[32]

---

[25] *United States v. Readus*, 2020 WL 2572280, *3 (E.D. Mich. May 21, 2020) (granting compassionate release for obese defendant suffering from sleep apnea, hypertension, and prediabetes).
[26] *United States v. Hilow*, 2020 WL 2851086, *4 (D.N.H. June 2, 2020) (defendant sentenced to ten years of prison after pleading guilty to conspiracy to distribute one kilogram or more of heroin).
[27] Jordyn Imhoff, *Does High Blood Sugar Worsen COVID-19 Outcomes?*, MHealth Lab (Aug. 11, 2020), https://labblog.uofmhealth.org/rounds/does-high-blood-sugar-worsen-covid-19-outcomes.
[28] Robert Webster Jr., *LiveSmart: Type 2 Diabetes Poses Increased Risk for Complications from COVID-19*, St. Peter's Health Partners (Oct. 1, 2020), https://news.sphp.com/wellness/livesmart-type-2-diabetes-poses-increased-risk-for-complications-from-covid-19/.
[29] *Medical Records*, 215.
[30] *COVID-19 risks: Irregular heartbeat may increase risk, blood pressure medicines do not*, American Heart Association (last accessed Jan.11, 2021), https://newsroom.heart.org/news/covid-19-risks-irregular-heartbeat-may-increase-risk-blood-pressure-medicines-do-not.
[31] *See* July Request.
[32] *See* Riser Decl., Ex. E, *September 23, 2020 Follow-Up Email Regarding Request for Sick Care*.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

- December 2, 2020: Email from defense counsel to Lompoc about Mr. Andrews' request for an evaluation about the lump on his testes[33]
- December 4, 2020: Follow-up email from Mr. Andrews about Lompoc's lack of response to his request for evaluation of heart issues and the lump on his testes[34]

Lompoc has not responded to any of these requests.

Lompoc's failure to respond is particularly troublesome because the survival rate for testicular cancer, when caught and treated early, is almost 100%.[35] But when not detected and treated early, the survival rate drops to 74% because "[m]ost [testicular] tumors... can spread to other areas such as the lungs, lymph system and brain."[36]

### 3. USP Lompoc's inability to protect inmates from the coronavirus

For people with underlying medical conditions, such as Mr. Andrews, Lompoc's failure to respond to the ongoing pandemic "heighten[s] the potential lethality of... exposure to COVI-19."[37] This failure to contain the virus, paired with Mr. Andrews' health issues, constitute extraordinary and compelling reasons. In one Ninth Circuit case, *United States v. Ludwig*, the district court granted compassionate release after the defendant successfully argued that his medical conditions and inability to follow the CDC's COVID-19 guidelines while incarcerated compelled release.[38] Similarly, inmates at Lompoc are unable to take precautions to protect themselves with COVID-19.

## II. 18 U.S.C. §3553(a)'s sentencing factors and the United States Sentencing Commission's policy statements favor sentence reduction under Section 3582.

After "extraordinary and compelling reasons" are established, as they are here, § 3582 instructs courts to consider § 3553(a)'s sentencing factors, consistent with the Guidelines' applicable policy

---

[33] *See* Riser Decl., Ex. G, *Defense Counsel Request for Sick Care*.
[34] *See* Riser Decl., Ex. J, *December 4, 2020 Follow-Up Email Regarding Request for Sick Care*.
[35] *Detecting Testicular Cancer Early is Critical*, Southeastern Med (Dec. 2, 2020), https://www.seormc.org/detecting-testicular-cancer-early-is-critical/.
[36] *Id.*
[37] *United States v. Fernandez*, 2020 WL 5909490, *6 (E.D. Cal. Oct. 6, 2020) (court granted compassionate release for defendant with asthma, chronic kidney disease, and obesity after considering "dire" conditions at FCI Lompoc).
[38] *United States v. Ludwig*, No. 2020 WL 4547347, *6 (E.D. Cal. Aug. 6, 2020) (granting compassionate release because the defendant had liver disease and "two treatments for hepatitis C...").

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

statements.[39] The Guidelines also require that the defendant does not pose a danger to the community.[40] Below, Mr. Andrews addresses the danger to community prong first. He then addresses the § 3553 and the applicable policy statements.

### A. Close monitoring with restrictive conditions, extensive programming, and the threat of returning to custody alleviate danger to the community concerns.

#### 1. Home confinement and close monitoring

Mr. Andrews has a long criminal history, including arrests, convictions, and parole violations. But if the Court "converts" his sentence "from institutional confinement into home confinement" with significant restrictions, this will ensure that he does not pose a danger.[41] In *United States v. Rodriguez*, a district court in the Ninth Circuit granted compassionate release for a defendant "serving an 86-month sentence for importation of methamphetamine."[42] The court rejected the government's argument that the defendant posed a danger, reasoning that strict home confinement with electronic monitoring, frequent drug testing, drug counseling, close monitoring, and "the threat of being returned to custody for a lengthy period for a violation of the conditions of supervision, alleviate concerns of any danger to the community."[43]

#### 2. Extensive educational, vocational, and behavior programming

Danger to the community is also alleviated by Mr. Andrews' significant rehabilitative achievements; while in custody, he obtained multiple degrees and completed more than 500 hours in programming. The role of programming and education is particularly important when defendants have an extensive and serious criminal history. For example, in *United States v. Crowe*, the district court acknowledged that, at the time of sentencing, the defendant "posed a danger." The court continued, explaining that "[w]hile on parole for a violence conviction," he "helped plan and carry out two armed

---

[39] *See e.g.*, *Williams* at *2 (explaining applicable standard for sentence modification under § 3582).
[40] *Id*. (citing § 1B1.13(2)).
[41] *See e.g.*, *United States v. Heyward*, 2020 WL 3547018 (D. Md. June 30, 2020) (explaining that defendant's release does not pose a risk to the community because "sentence is not shortened in terms of years, but is instead, converted from institutional confinement into home confinement" and the defendant "will submit to location monitoring.")
[42] *United States v. Rodriguez*, 2020 WL 4592833, *1 (S.D. Cal. Aug. 5, 2020).
[43] *Id*. at *4.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

7

robberies and... failed to meaningfully take responsibility for his conduct."[44]

The court also explained that the defendant's completion of drug education courses, conflict management, several vocational classes, and work history in prison served, in part, to "persuade the Court that Crowe has been adequately deterred from future criminal conduct and that additional incarceration is not necessary to protect the public."[45]

In another case, *United States v. Wilson*, the court granted compassionate release despite "aggravating nature" of the offense and a "troubling" criminal history.[46] As part of this robbery, the defendant "robbed a bank of $900 by physically grabbing a teller and forcing her to hand over the money in her drawer."[47] He also "wore a hood during the robbery and changed his clothes after in an attempt to hide his identity."[48] The court's reduction reflected, in part, the defendant's completion of "a substantial number of educational courses," as well as drug treatment.[49] Release was also bolstered by a proposed release plan that "appear[s] to provide... the stability and resources necessary for his transition back into society."[50]

### (i)    Education

Mr. Andrews obtained his GED in March 2015.[51] He then received an Associates in Arts, Social Science, degree in December 2019.[52] During this time, he also received an Associate in Arts, Social and Behavioral Sciences.[53]

### (ii)    Programming

Since his imprisonment, Mr. Andrews has completed 503 hours of programming.[54] This

---

[44] *United States v. Crowe*, 2020 WL 7185648, *2 (E.D. Mich. Dec. 7, 2020).
[45] *Id*. at *11. The court also cited family support and a detailed re-entry plan.
[46] *United States v. Wilson*, 2020 WL 5894193, *7 (N.D. Iowa Oct. 5, 2020) (defendant sentenced to 84 months imprisonment after pleading guilty to bank robbery. The offense's seriousness was "compounded by his criminal history, which is replete with thefts, robberies, drunk driving, and drug offenses.")
[47] *Id*. at *3.
[48] *Id*.
[49] *Id*.
[50] *Id*.
[51] Ex. A, 1.
[52] *Id*. at 4.
[53] *Id*. at 5.
[54] *Id*. at 1-2.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

8

includes:[55]

- Alternative to Violence Project
- Advanced Alternatives to Violence Project
- Training for Facilitators in Non-Violent Conflict Resolution
- Diabetes Course
- Drug Education Course
- Weight Management
- Solid Waste Management and Composting
- VT Professor Teaches Office 2010
- THRESHOLD[56]
- Talking with Your Doctor
- Body Fat Course
- Man's Search for Meaning
- Beginners Spanish

### 3.  Heightened risk of return to custody

Another factor to consider is the significant risk of injury or death from COVID posed by remand. As one court explained, this should "tend to cool Defendant's enthusiasm for being out and about committing crimes."[57] Stated another way, the risks of criminal conduct during the coronavirus crisis have exponentially raised the stakes and thus serve as another deterrent to crime.

### 4.  Mr. Andrews has an excellent release plan

If released, Mr. Andrews will live with his sister, Imani Andrews, in her Oakland home.[58] He can quarantine and self-isolate, and receive medical treatment. His sister has gloves and masks, and she has

---

[55] *Id*. at 9-21.
[56] In the six-month Threshold Program, "[c]haplains assist... inmates address issues... critical to a successful life in the community after release." *Inmates Embrace Threshold*, Bureau of Prisons (May 23, 2016), https://www.bop.gov/resources/news/20160523_inmates_embrace_threshold.jsp.
[57] *United States v. Medlin,* 2020 WL 4274199, *5 (M.D. Tenn. July 24, 2020).
[58] *See* Riser Decl., Ex. G.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

practiced social distancing since the pandemic began.[59] After quarantining and self-isolating, Mr. Andrews will be able to see his son and father. He will also help provide care to his ailing father, a wheelchair-bound veteran.[60]

### B. Section 3553(a)'s sentencing factors support sentence reduction.

#### 1. The "most up-to-date picture" includes Mr. Andrews' impressive post-sentencing rehabilitation and the ongoing coronavirus pandemic

In *United States v. Pepper*, the Supreme court held that courts should consider the "most up-to-date picture" when evaluating §3553(a)'s sentencing factors. The *Pepper* court observed, "evidence of post-sentencing rehabilitation may be highly relevant to several... § 3553(a) factors..."[61] The Court provided several instances where this type of evidence is relevant when considering:

- The history and characteristics of the defendant
- "[T]he need for the sentence imposed" to serve the general purposes of sentencing, such as "afford[ing] adequate deterrence to criminal conduct," "protect[ing] the public from further crimes," and "provide... needed educational or vocational training..."
- "[A] sentencing judge's overarching duty... to impose a sentence sufficient, but not greater than necessary"[62]

Mr. Andrews' "post-sentencing conduct," such as his impressive history of programming and educational achievements, "provides the most up-to-date picture of [his] history and characteristics."[63]

Another part of the "most up-to-date picture" is the ongoing coronavirus pandemic, which has killed more than 188 inmates in BOP custody.[64] Because he was sentenced long before the pandemic, Mr. Andrews' original sentence did not contemplate a deadly virus sweeping through federal prison. Both the health risk of the virus and Mr. Andrews' post-sentencing rehabilitation are thus highly relevant to §3553(a)'s sentencing factors.

---

[59] *Id*.
[60] *Id.*
[61] *Pepper v. United States*, 562 U.S. 476, 491 (2011).
[62] *Id*. (internal quotations and citations omitted).
[63] *United States v. Decator*, 452 F. Supp. 3d 320, 325 (D. Md.), *aff'd* sub nom. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).
[64] *COVID-19 Cases*.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

### 2.     Section 3553(a)(1) includes family and community ties and employment

"Courts have determined that [§ 3553(a)(1)] may favor sentence reduction where an inmate has numerous family ties, including family members who will provide for him."[65] For example, in *United States v. Parker*, the district court reduced the defendant's life sentence to time-served after concluding that his family ties supported reduction.[66] The defendant's offense was no doubt serious: Richard Wayne Parker, a then-Special Agent with the California Department of Justice's Bureau of Narcotic Enforcement ("BNE"), conspired with his co-defendants, all members of law enforcement, to "use their collective... knowledge and experience to illegally seize narcotics... from narcotics traffickers and then... sell[] the seized narcotics."[67] As part of this conspiracy, Parker gave his co-defendants his key and security code to a BNE vault, where they later stole at least 295 kilograms of cocaine.

A jury then found him guilty of subscribing to a false tax return, multiple counts of conspiracy and possession with intent to distribute, and money laundering.[68] In prison, he filed multiple motions and petitions for post-trial relief – all denied. But he was then granted compassionate release, in part, because of "extensive use of prison programming" and "aver[ment] that he has been offered employment at his family's... businesses."[69]

Mr. Andrews also has a strong, loving family and multiple career options. His cousin, Anthony Patrick, works with the College of Alameda's Career and Employment Center, and is "specifically assigned to the re-entry population."[70] As a result, he can ensure Mr. Andrews' employment upon release.[71] Mr. Andrews could also work at his previous employer, Environment Quality Management.[72]

---

[65] *United States v. Parker*, Case No. 2:98-cr-00749-CAS, 1, 22 (C.D. Cal. May. 21, 2020) (internal citations and quotations omitted).
[66] *Parker* at *12 (C.D. Cal. May 21, 2020).
[67] *Id*.
[68] *Id*. at *5.
[69] *Id*. at *24.
[70] *Letters ISO*.
[71] *Id*.
[72] Riser Decl.

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

11

### 3. Mr. Andrews' imprisonment cannot provide him with needed educational and vocational training or medical care

Section §3553(a)(2)(D) instructs courts to consider the need for sentences "to provide the defendant with needed educational or vocational training [or] medical care." Unfortunately, because of the coronavirus and Lompoc's lockdown, the prison cannot fulfill this mandate.[73] Nor has Lompoc provided needed medical care. Here, this includes the prison's failure to respond to multiple requests for evaluation of a potential tumor. Thus, Mr. Andrews' custodial sentence no longer serves § 3553(a)(2)(D)'s directive to provide needed training and medical care or needed educational or vocational training.

### 4. Sentencing Mr. Andrews to home confinement with strict restrictions and a period of supervised release satisfies 3553(a)(2)(A)'s requirements

#### (i) Mr. Andrews' sentence is more punitive than intended

When this Court first imposed Mr. Andrews' sentence, it was "sufficient, but not greater than necessary" to comply with § 3553(a)(2)'s purposes. But the pandemic and the resulting lockdown measures imposed by Lompoc "have made confinement much more punitive than" initially contemplated.[74] In other words, the "previously imposed sentence is no longer just punishment" because "there is a real risk that it could be transformed into a death sentence."[75]

#### (ii) Mr. Andrews' time spent in custody, along with a period of home confinement and supervised release, will reflect the serious nature of the offense and provide just punishment

Section § 3553(a)(2)(A) also instructs courts to impose a sentence that "reflect[s] the seriousness of the offense" and "provide[s] just punishment." The government will probably argue that these dual

---

[73] While the Bureau recognizes that "delivery of First Step Act approved Evidence-Based Recidivism Reduction (EBRR) Programs and Productive Activities (PAs) is required by law," "[i]nstitutions with active COVID-19 cases" can "make exceptions to these programming requirements for the safety of inmates and staff." *Modified Operations*, Bureau of Prisons (last accessed Jan. 10, 2021), https://www.bop.gov/coronavirus/covid19_status.jsp.

[74] *United States v. Indarte*, 2020 WL 6060299, *1 (W.D. Wash. Oct. 14, 2020) (granting compassionate release for defendant convicted of sexual abuse, in violation of 18 U.S.C. §§ 2242, after considering § 3553(a)'s sentencing purposes).

[75] *United States v. El-Hanafi*, 10-CR-162 (KMW), 11 (S.D.N.Y. May. 19, 2020) (court granted release for defendant guilty of providing and attempting to provide material support and resources to Al Qaeda and conspiring to provide material support and resources to Al Qaeda).

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

purposes are not satisfied because Mr. Andrews has served approximately 46% of his original sentence. This argument falls flat when examining these requirements in the context of the ongoing pandemic:

- *United States v. Castillo*: granting release to defendant serving life sentence because of health issues. The court reasoned, "a sentence of time served, representing 12 years or 144 months in prison, adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment."[76]

- *United States v. Galaz*: granting § 3582 reduction to defendant who served 14 months of 48-month sentence. Court noted that the defendant "made the ill-advised decision not to appear for sentencing and absconded to Mexico for nearly three and a half years..." The court then granted reduction because "[c]ourts have been willing to grant release in spite of a short amount of time served where a defendant's health conditions rose to the level of an extraordinary and compelling reason."[77]

- *United States v. Terraciano*: granting compassionate release even though this would "effectively... reduce [the sentence] by about 80 percent." Court explained that "an 8-month sentence of incarceration might not serve the deterrence and restitution goals of § 3553 in a world unspoiled by a viral pandemic, [but]... that world remains merely hypothetical."[78]

- *United States v. Barber*: granting compassionate release even though "the amount of time served... is relatively short [when] compared with the... sentence originally imposed." Defendant served less than 20% of sentence, but court reasoned that "this amount of time, when considering the current characteristics of defendant... [and] home confinement and community service... adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public."[79]

---

[76] *United States v. Castillo*, 2020 WL 2820401, *12 (S.D. Tex. May 29, 2020).
[77] *United States v. Galaz*, 2020 WL 4569125, *13 (S.D. Cal. Aug. 6, 2020) (internal quotations and citations omitted).
[78] *United States v. Terraciano*, 2020 WL 5878284, *8 (E.D. Cal. Oct. 2, 2020) (emphasis added).
[79] *United States v. Barber*, 2020 U.S. Dist. LEXIS 83457, *12 (D. Or. May 12, 2020).

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

### 5. Mr. Andrews is deeply remorseful

Upon arrest, Mr. Andrews readily admitted to his conduct and role in the robberies, including his own firearm possession, and he took full responsibility for his conduct. Less than a month after his Indictment, he entered a guilty plea. His conduct throughout this process evinces a commitment to accountability, which has only increased in the intervening time. Mr. Andrews now realizes "that every single action I take, in some way affects every single person I know and love including those I don't." As a result, he is "obligate[d]… to respectfully think of others first and act accordingly."[80]

Mr. Andrews' family have noticed this shift, too. His father, Clarence Lee Andrews, Sr. writes that, after six years, he visited his son and was "moved by" his growth.[81] Similar sentiments abound: his sister, Imani Andrews, writes, "we have seen a change in him," and a family friend describes how that Mr. Andrews "show[ed] me that he is ready to face the world and be a productive member of society."[82]

### C.  United States Sentencing Guidelines policy statements.

Finally, under the relevant United States Sentencing Guidelines, "extraordinary and compelling reasons" include:

(1) medical conditions which diminish the ability of the defendant to provide self-care in prison

(2) age-related deterioration

(3) family circumstances, and

(4) other extraordinary and compelling reasons that exist either separately or combined with the above categories.

That said, in the wake of the First Step Act, their continued vitality is unclear. Some courts have reasoned "that, in the absence of applicable policy statements [after the enactment of the FSA], courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13... warrant compassionate release."[83]

---

[80] Ex. M, *Letter from Clarence Andrews*.
[81] *Letters ISO*.
[82] *Id*.
[83] *Williams*, *2 (N.D. Cal. Jul. 6, 2020) (explaining, "The Court need not decide the issue since it finds consideration of the factors stated in the existing Guidelines useful in its exercise of discretion herein.")

MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)
Case No. CR-14-094 YGR

14

**REQUEST FOR IMMEDIATE RELEASE**

Mr. Andrews is 46 years old and he has multiple conditions that substantially increase his risk of illness or death from COVID-19. The Bureau has also failed to treat potential cancer. These extraordinary and compelling reasons, along with his substantial rehabilitative efforts, tight-knit support system, and alternatives to imprisonment, support sentence reduction under § 3582.

Dated: January 14, 2021

                                                         /s/
                                        ASHLEY RISER
                                        Attorney for Defendant CLARENCE ANDREWS